Barnard *v.* Barlow.

## Charlotte E. Barnard

*v.*

## Emily Barlow et al.

1. The circumstances, situation and surroundings of a testator, at the time of executing his will, may be shown by oral evidence, to place the court in his situation, and thus enable it to understand the meaning and application of the language he has adopted.

2. A devise or gift may arise from implication, but to justify the conclusion, that a gift has been made in this way, the implication in favor of the gift must rest on a probability of an intention so strong that an intention, contrary to that which is thus imputed to the testator, cannot be supposed to have existed in his mind.

On final hearing on bill and answer and proofs taken orally.

*Mr. Theodore Runyon,* for the complainant.

*Mr. John Linn,* for the defendant.

Van Fleet, V. C.

The main object of the suit in this case is to procure a construction of the will of Thomas Barnard, deceased. Over seventeen years elapsed between the date of his will and the time of his death. His will bears date January 17th, 1860, and he did not die until October 7th, 1877. He died leaving a widow, four daughters and two sons. His children were all in being when he made his will. His eldest child, a daughter, was then twenty-six years old, and married; his second, also a daughter, was twenty-two, but was unmarried, and is still; his third, also a daughter, was twenty and married; his fourth, a son, was eighteen; his fifth, also a son, was fourteen; and his youngest, a daughter, was ten. It is thus seen that when he died all his children were of full age, the youngest being then over twenty-seven; and also that when he made his will two of his children, both daughters, were over age, one was married and the other

unmarried ; that his third child, a daughter, was nearly of age
and married, and that the other three, two sons and a daughter,
were minors.   The condition of his family at the time he made
his will is important.   Its provisions must be read in the light
of the circumstances by which he was then surrounded.   Ex-
trinsic evidence is admissible for this purpose.   The circum-
stances, situation and surroundings of a testator may be shown by
oral evidence, to place the court in the situation in which the
testator was when he made his will, and thus enable it to under-
stand the meaning and application of the language he has adopted.
*Griscom* v. *Evens, 11 Vr. 402, 407.*

By the will under consideration the testator gave the use of
his whole estate to his widow during life, with direction that the
principal should remain untouched unless its income should be
too small for her support.   Then follows the clause which the
court is asked to construe.   These are its words :

" at her (my widow's) death I will it (my estate) to be kept in the same shape
or form (in some safe investment) for the support of the children not of age or
married ; on the marriage of my four daughters I will it to be divided equally
between the said four girls, and the share settled on each of them for their
lifetime, all and except one dollar each to my two sons, trusting that they will
follow my example of industry to gain what they may require."

The testator's widow is dead, and as already stated, all his
children were of full age when he died.   And all are now
married except one daughter and one son.   The unmarried son
makes no claim to any part of the estate.   He neither asks for
support, nor for a part of the *corpus*.   As the testator cut off his
two sons with a dollar each, coupled with the expression of a
hope that they would follow his example of industry to get what
they might need, I think he has made it tolerably plain, that he
meant, after his sons attained their majority and became inde-
pendent, they should receive nothing from his estate except a
dollar each.   On attaining their majority, he meant, that their
right to look to his estate for anything, except the dollar, should
cease, and that after they became of age they should take care of
themselves, and depend for whatever they might desire to acquire
upon their own industry and thrift.   The meaning of this part

Barnard *v.* Barlow.

of his will does not seem to me to be involved in much obscurity. The testator's unmarried daughter claims, however, that she is entitled to the whole income of his estate up to the time she shall marry, and that no division of the estate can be made until after that event shall have happened. Whether this claim is well founded or not is one of the points on which the court is required to pronounce an opinion. This daughter is now over fifty years of age.

The words of the will make it plain, I think, that the testator meant that his estate should be kept invested after the death of his widow but for a single purpose. His words are: "At her death I will it to be kept in the same shape and form." He had, in a preceding part, directed that his estate should be securely settled on his widow, "in some safe investment," so that she might have its income, during life, for her support, the principal to remain untouched unless the income should be too small for her support. After his widow's death he directs that his estate shall "be kept in the same shape and form" that it was in before her death, and then he says that the purpose of this direction is, "for the support of the children not of age or married," thus designating two classes, and meaning, as I think, that his estate should be kept invested, after his widow's death, to provide a support, during their minority, for such of his children as should be minors when his widow died, and also to provide a support, while they remained single, for such of his adult daughters as should not have married up to the time of his widow's death. For the reasons already stated, I do not think that the provision for support was intended to embrace an unmarried adult son. The sons, on attaining their majority, were to have a dollar each and the benefit of their father's example of industry. That was the patrimony they were given and the whole of it. Reading this part of the will according to the best light I can gather from it, looking at it in its entirety, my conclusion is, that the provision for support was intended to embrace both minor daughters and sons, and likewise unmarried adult daughters, but not unmarried adult sons.

---

Barnard v. Barlow.

---

Under this construction the unmarried daughter is entitled to the benefit of the provision for support. She has a right to be supported, so long as she remains single, out of the income of the testator's estate, but not to its whole income unless it is only sufficient to give her a proper support according to her rank and condition in life. It will be observed that there is no gift of the income, either directly or by implication. Provision is made for the support of the children as a class. There is not the least indication that the testator meant, as the class diminished in number, the survivors should take the whole. And, just here, it is important to remark that, when the provision was made, two of the daughters were already married, so that the testator knew, if he understood what his will said, that they could never participate in its benefits. He also knew, as the years went by, the persons who could participate in its benefits would constantly diminish in number. The provision is simply for support—that is the whole extent of the gift. When, therefore, the surviving member of the class gets that, she gets all that the words of the gift give her, and all that the testator intended she should have.

Adopting this as the true construction of that part of the will under consideration, the testator's subsequent direction respecting the division of his estate, expressed in these words, " On the marriage of my four daughters, I will it to be divided equally between the said four girls," does not, in my judgment, preclude his four daughters from having the present enjoyment of so much of his estate as may now be divided among them, without impairing the right of the one still unmarried to support. The will, when considered as a whole, so that the whole scheme of the testator is seen, leads me to think that the testator's purpose, in directing that his estate should be kept invested after his widow's death, was to render it certain that the provision he had made for the support of his children would be carried into effect, and that such of them as might be entitled to support should have it. I do not think it can be believed that he meant, if either of his daughters died without having contracted a marriage, the other three should take nothing under his will, and that in that event no division of his estate, under his will, should

ever be made, and the direction to settle one share on each of his daughters for her lifetime should not be executed. When he made his will, his youngest daughter was only about ten years old, so that among the uncertainties of the future was the possibility that she would not live to reach a marriageable age. Now, if the clause relating to the division of his estate is read by itself, wholly disassociated from other parts of the will, and without regard to what appears to have been the testator's general scheme, it would be possible to understand it as directing that no division should be made until all four of his daughters had married. That, I am satisfied, was not the meaning of the testator.

My conclusion, therefore, is that the unmarried daughter has a right to be supported out of the testator's estate until she marries, and, to that end, she has a right to have so much of his estate kept invested as will produce an annual income sufficient for that purpose; the residue of his estate must be divided into four equal shares, and one share settled on each daughter for her life.

The more difficult and perplexing question is, who takes the remainder? In other words, what provision shall be made in the settlements as to who shall take the remainders on the death of the life tenants? The will gives no direct answer to this question. The only clue to an answer which it furnishes is such as arises from inference or implication. No gift of the remainder is made unless it is made by implication. A devise or bequest may arise from implication, but to justify the conclusion that a gift has been made in this way the implication in favor of the gift must rest on a probability of an intention so strong that an intention, contrary to that which is thus imputed to the testator, cannot be supposed to have existed in his mind. *Denise* v. *Denise, 10 Stew. Eq. 163, 169; Bishop* v. *McClelland, 17 Stew. Eq. 450, 452.* The testator evidently intended to make a complete disposition of his estate—to leave nothing undisposed of. This is clearly shown, as I think, by the language of his bequest to his two sons. The *corpus* of his whole estate is to be settled on his four daughters except one dollar to each of his sons. The sons were to take nothing except one dollar each. Whatever else they

might require he directed them to get by imitating his example of industry. He gave them the benefit of his example as their patrimony, and evidently meant that his estate should go to others. In no event and under no circumstances were his sons to have anything but the one dollar. It is equally clear that he meant his daughters should only take a life estate. His direction is, that the *corpus* of his estate, "all and except one dollar each to my two sons," shall be equally divided among his four daughters, and one share settled on each for her lifetime. So far his intention seems to be tolerably clear. But at this point we enter the region of doubt. One of two constructions must, however, be adopted, namely, either that the testator died intestate as to the remainder, or that there is a gift of it, by implication, to the issue of his daughters. After much hesitation I have concluded to adopt the latter as probably the one most likely to give effect to the testator's intention. It is the one that must be adopted, if effect be given to his intention to deprive his sons of all part of his estate except one dollar each, and to compel them to get whatever else they may require in this life by the exercise of their industry. Intestacy can only exist where there is no will. Here it appears that the testator had a will in respect to his whole estate, so far, at least, as his sons were concerned. He cut them off with one dollar each, and then, in directing that they must get whatever else they might need by the exercise of industry, showed that he did not intend that they should ever, in any event or under any circumstances, have a right to anything more from his estate. From this expression of intention, coupled with the fact that the gift to the daughters is for life only, I think it may be implied, naturally and fairly, that the testator intended to give the remainder to the issue of his daughters.

While I cannot say that my mind is free from all doubt respecting the accuracy of this result, I can say that it is the best I have been able to reach after careful and full consideration.