EMILY BARLOW et al., appellants,

*v.*

CHARLOTTE E. BARNARD, respondent.

The testator, Thomas Barnard, held to have died intestate as to the remainder of his estate left after the expiration of the life estate of his daughters therein; that there was no devise or bequest of such remainder by the will, and no gift thereof could be implied in this case; that the correct rule as to what is necessary to warrant the implication of such a gift was correctly stated by the vice-chancellor in *5 Dick. Ch. Rep. 135,* but held that this case is not within that rule.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Barnard v. Barlow, 5 Dick. Ch. Rep. 131.*

*Mr. John Linn,* for the appellants.

*Messrs. Riker & Riker,* for the respondent.

The opinion of the court was delivered by

ABBETT, J.

This is an appeal from a decree of the chancellor on a bill filed for the construction of the will of Thomas Barnard, deceased, and for directions as to the execution of its provisions.

The will is dated January 17th, 1860. The testator died October 7th, 1877. When the will was made he had a wife, four daughters and two sons: Emily, aged twenty-six, and then married; Charlotte Ellen, aged twenty-two, then and still unmarried: Mary Letitia, aged twenty years, then married; Alice Isabel, aged ten years, married in 1876, and who died before her mother, leaving two children, Lucy and Nellie Haring; Alfred Thomas, aged eighteen, and Arthur Clay, aged fourteen. Charlotte, the widow of deceased and his sole executrix, died January 5th, 1890. The following members of the family were

then living, viz., the two sons; the grandchildren, Lucy and Nellie Haring; Emily Barlow, widow of John S. Barlow, who has one child, Ida G. Cockshaw; Mary L. Treadwell, wife of William A. Treadwell, who has one child, Grace, wife of George A. Treadwell; and Charlotte E. Barnard, still unmarried.

When Thomas Barnard died all his children were of full age, the youngest being over twenty-seven. When he made his will two of his children, both daughters, were over age; one was married and the other unmarried. His third child, a daughter, was nearly of age and married, and the other three children, two sons and a daughter, were minors.

The will, after giving to his wife, for her life, all the real and personal estate of which he should die possessed, proceeds:

"I wish and will at my death that all property of whatever kind of which I may die possessed may as soon as practicable, be realized and settled securely on her in some safe investment, the interest of which I trust in God will comfortably support her, the principal to be untouched, unless the interest of that left be too small for her support, at her death I will it to be kept in the same shape or form, for the support of the children, not of age or married; on the marriage of my four daughters, I will it to be equally divided between the said four girls and the share settled on each of them for their lifetime; all and except one dollar each to my two sons, trusting that they will follow my example of industry to gain what they may require."

The learned vice-chancellor, in construing this will, held that, after the life provision for the widow, the provision for support was intended to embrace both minor daughters and sons, and likewise unmarried adult daughters, but not unmarried adult sons, and that, under this construction, the unmarried daughter is entitled to the benefit of the provision for support; that she has a right to be supported, so long as she remains single, out of the income of the testator's estate, but not to its whole income unless it is only sufficient to give her a proper support according to her rank and condition in life. He held that there was no gift of the income, either directly or by implication, and holds that there is not the least indication that the testator meant, as the class (his children) diminished in number, the survivors should take the whole. He further says: " My conclu-

sion therefore is that the unmarried daughter has a right to be supported out of the testator's estate until she marries, and to that end she has a right to have so much of his estate kept invested as will produce an annual income sufficient for that purpose; the residue of his estate must be divided into four equal shares, and one share settled on each daughter for her life."

He then says: "The more difficult and perplexing question is, who takes the remainder? In other words, what provision shall be made in the settlements as to who shall take the remainders on the death of the life tenants? The will gives no direct answer to this question." He also says: "No gift of the remainder is made unless it is made by implication." We agree with the learned vice-chancellor in the conclusions reached by him up to this point.

He then says: "But at this point we enter the region of doubt. One of two constructions must, however, be adopted, namely, either that the testator died intestate as to the remainder or that there is a gift of it, by implication, to the issue of his daughters." He adopts the latter construction. It is a case where there must be much hesitation in adopting any construction as to the remainder of the estate. The rule is correctly laid down by the vice-chancellor, that to justify a gift by implication, the gift must rest on a probability of an intention so strong that an intention contrary to that which is thus imputed to the testator cannot be supposed to have existed in his mind. Applying this test, we cannot come to the conclusion reached by him.

What was the intention of the testator as to this remainder? It can be reached by adopting the view that he did not attempt to make any disposition of his estate beyond the lives of his wife and daughters. It is a fair inference, from his will and the circumstances surrounding its execution, that his first care was for his wife for her life; next, to take care of all his children during their minority unless they were provided for by marriage; then to care for his daughters during their lives, providing first for ample support for his unmarried daughter out of the income of his estate. He took better care of his daughters than of his sons during their lives because he thought it to

be wise to make provision so that his sons should follow his example of industry to gain what they might require, but this did not necessarily involve an intention to disinherit them entirely after the primary purposes in his mind had been fully accomplished. That part of the will which gives the sons one dollar each was where he was dealing with the income of the estate to be divided in four parts among his four daughters for their lifetime. In disposing of this income he first gives one dollar to each of his sons, which is to be all that they are to receive of said income during the life of his daughters. He does not seem to have cared or provided for anything after his daughters had been taken care of during their lives. As between his daughters, he evidently thought that the married ones would have husbands to provide for them primarily, and that if any of them were unmarried, such would have no other source to maintain them except from the income of his estate, so he provided that all of his income necessary for the support of the unmarried daughter should be used for that purpose, and if any was left, that it should be equally divided among his daughters during their lives. There was no reason why he should totally disinherit his sons; such intention is not shown either in the will or by the evidence in the case. He thought his sons were primarily able to take care of themselves, and that they should do so as long as any of his daughters lived. When they were all dead he no longer had any will as to what was left; he was content to leave that undisposed of—to be distributed under the intestate laws of the state. This view would not require the court to raise a gift by implication, and it would not require us to find that the father intended to disinherit his sons for the benefit not of his daughters, but for his daughters' children, who might be equally able to gain what they might require by their own industry, as his sons in their old age, or their children. The construction of the vice-chancellor would not only disinherit the sons but also disinherit their children.

We therefore reach the conclusion that the views of the vice-chancellor are correct except as to the remainder of the estate after the death of the four daughters, and as to that we find that

the testator died intestate. The decree of the vice-chancellor should be reversed, so that it can be modified to conform to the views herein expressed.

*For reversal*—THE CHIEF-JUSTICE, ABBETT, DIXON, LIP-PINCOTT, BOGERT, KRUEGER, PHELPS, SMITH—8.

*For affirmance*—DEPUE, REED, VAN SYCKEL—3.