The bill is filed by complainant as executor and trustee under the will of Mary B. Hentz, deceased, for the interpretation of said will, or certain provisions thereof.
Testatrix had a city residence in New York city and a country residence or estate at Madison, New Jersey. Adjoining this latter was a tract of eleven acres (hereinafter called the "Greenhouse Tract") occupied and used, at the time of the execution of the will and at the death of testatrix, by a son, Henry, in the business of growing roses. This tract was owned by testatrix, and evidently would have constituted a part of the country residence if it had not been separately used by the son, as stated.
By her will, testatrix devised both the city residence and the country residence to her husband for life, with remainder to her daughters, Mary and Helen, or the survivor, or if they both predeceased her, to her son, Leonard, or if he also predeceased her to her next of kin, but the "Greenhouse Tract" is specifically excepted.
The will next proceeds to give all the remainder of the estate, including the "Greenhouse Tract," to the trustee, upon certain trusts. *Page 285 
The first trust provided for deals with the "Greenhouse Tract." The will provides that if the son, Henry, is still conducting his florist business thereon, the trustee shall rent the tract to him so long as he desires during his life, at a net rental of $3,000. The will then proceeds (in the "fourth" clause), to dispose of the equitable estate in the tract — in three paragraphs, each dealing with a certain contingency. (These paragraphs are not numbered in the will.)
(1.) "In case my husband survive me, and my son, Henry, shall at any time after my decease and during the life of my husband, cease to occupy said tract and conduct said business, * * * then" the husband is given the use for life, rent free, and "upon his death" the trustee is directed to convey to her two daughters, Mary and Helen, or the survivor, or if both predecease the husband, then to her son, Leonard, or if he also predecease the husband, then to her next of kin.
(2.) "In case I survive my husband, and my son, Henry, survive me, and shall at any time after my decease, cease to occupy said tract and conduct said business then upon the happening of that event" the trustee is to convey the tract, precisely as in the preceding paragraph.
(3.) "In case my son, Henry, shall not survive me, then" the husband is given the use for life, rent free, and "upon his death" the trustee is to convey the tract precisely as in each of the two preceding paragraphs.
By the next (the "fifth") clause the trustee is directed to pay to the husband during his life, the rents received from the Greenhouse Tract.
Then the will directs the trustee to "invest and reinvest" "all the rest, residue and remainder of my estate," and to pay the net income to the husband for life, and at his death to divide thecorpus into four parts (one twice the size of each of the other three), the income from each of these shares to go to a specified child, for life, and the corpus to go to the person appointed by such child's last will, or failing such appointment, to the next of kin of said child.
There are numerous other provisions in the will, which are not deemed essential to the present discussion — except one which will be mentioned later. *Page 286 
The will was executed in 1901; testatrix died in 1904, her husband and all four children survived her. The husband died in 1924, the daughter, Helen, two months later, and the son, Henry, in 1929 — having conducted the florist business on the Greenhouse Tract up until his death. The other son and daughter are still living.
By deed in 1927, the daughter Mary, and the executor of the deceased daughter Helen (pursuant to power under Helen's will), conveyed to the son Henry, all the right, title and interest of the two daughters in the Greenhouse Tract. By Henry's will, all his right, title and interest therein was devised to his wife, Florence.
It will be observed that in the provisions relating to the disposition of the Greenhouse Tract, the will lacks any express provisions as to the contingency which has happened; to wit, the husband and the son, Henry, both survived testatrix, but Henry survived the husband, and did not cease conducting the florist business on the tract until his death, after the death of the husband.
It is contended by Florence Hentz (the widow and devisee of the son Henry), that under the will of the textatrix, the two daughters, Mary and Helen, took by implication a vested remainder in the "Greenhouse Tract," which passed, by the subsequent deed of Helen's executor and Mary to Henry, and by Henry's will to Florence. Complainant trustee on the other hand urges its disbelief, or at least its doubt, that under the language of the will any such estate by implication can be deemed to have arisen.
Upon examination and consideration of the whole will, the general purpose and testamentary scheme is clearly apparent.
First, it is that the husband shall have a life estate in the entire estate. He is given a legal life estate in the city residence and in the country estate, except the "Greenhouse Tract;" he is given an equitable life estate (either the use or the rents) in the Greenhouse Tract and an equitable life estate in all the residuary estate. *Page 287 
Second, it is that, subject to the husband's life estate, the remainder in the city residence and in the country estate, is to go to the two daughters, or the survivor of them, or to the son, Leonard.
Third, it is, that as to that portion of her estate other than the city house and country estate (presumably securities, jewelry and the like), subject to the husband's life estate, the income therefrom was to be divided among all of the children and assured to them during their lives.
Fourth, the son Henry, was to be enabled to continue his rose business on the Greenhouse Tract, so long as he wished to do so and paid a reasonable rent.
The gift of the city residence and the country estate to the husband for life and, subject to such life estate, to the daughters (or daughter, or son, Leonard) is clear and definite. The Greenhouse Tract, which was part of the country estate, would have passed by this gift, if it had not been specifically excepted. The reason for its exception is obvious — and is practically stated almost in so many words in the will — it had been and was being used by the son Henry for the conduct of his florist business, and testatrix desired that he should not be disturbed in that use and occupation, so long as he should desire it to continue, provided he paid a reasonable rent.
If it had not been for this desire that Henry should be enabled to continue the business on the Greenhouse Tract, it is quite evident that it would not have been excepted from the general devise of the country estate. That general devise; and the specific provisions for remainder in the clauses dealing with the Greenhouse Tract; and the last paragraph of the "second" clause wherein testator expresses the hope and desire that the twodaughters if they survive testatrix and her husband, will continue to occupy the city residence and country estate as a home for themselves and for the sons also, if unmarried; and the absolute lack of anything else whatever in the will to indicate that testatrix contemplated that anyone other than the daughters — if they survived — should have any interest in the residences or the Greenhouse Tract, *Page 288 
after the husband's death, except Henry's right to lease the Greenhouse Tract for his business, so long as he wished — all this shows clearly that the general intent and desire was that the Greenhouse Tract should go to the daughters (if they survived), as a part of the country estate, subject only to Henry's right to lease it, and to the husband's life estate.
It seems unquestionable that that is what she intended and desired to accomplish in this will. Unfortunately, the draftsman either overlooked some of the possible contingencies in the somewhat complex situation, or omitted some clause or paragraph in preparing the final draft — for there are certain contingencies for which the will makes no express provision.
Consideration shows that there were seven possible contingencies which might have arisen with regard to the several factors with which testator was concerned, as follows:
1. Husband and Henry both survive testatrix; Henry mightcease occupancy before husband's death, or
2. Under the same circumstances; Henry might cease occupancyafter husband's death, or,
3. Under the same circumstances; Henry might never occupy.
4. Husband predecease, and Henry survive, testatrix, Henry might occupy and then cease, or,
5. Under the same circumstances; Henry might never occupy.
6. Husband survive, but Henry predecease, testatrix (Henry never occupies).
7. Both husband and Henry predecease testatrix (Henry never occupies).
There was required a testamentary disposition (a) of the legal life estate or occupancy of the premises during the life of the husband and the period of Henry's occupancy; (b) of the equitable life estate or income from the premises, during the same period; and (c) of the remainder, legal and equitable, after the death of the husband and the cessation or failure of the occupancy by Henry — and this testamentary disposition was required as to each of the seven contingencies above tabulated. *Page 289 
Reference to the will (see the three paragraphs thereof hereinbefore partly quoted and partly excerpted) shows that in addition to the lack of any express provision disposing of the interests in the premises in the event of contingency No. 1 (ante), there is also a failure, under the strict language of the will, of any express disposition in the events of contingencies Nos. 3, 5 and 7 (ante).
Contingencies Nos. 3 and 5, involve the possible circumstance that Henry might not occupy the tract at the time of his mother's death or at any time thereafter. In such event he could not of course "cease" to occupy "after" the death of testatrix — which is the language of the will.
Assuredly, however, in all human probability, what testatrix had in mind was the condition or event of Henry "not occupying;" whether that non-occupancy occurred as the result of a failure
to occupy or a cessation of occupancy. Contingency No. 3 would occur, if at all, at the instant of the death of testatrix; contingency No. 2 might happen within a week, or a day, or an hour after the death of testatrix. The situation in either event — so far as testatrix was concerned in her desire for testamentary disposition — would be precisely the same. It cannot be intelligently supposed that she intended to differentiate in this regard, it must be concluded therefore that the words "cease to occupy" were intended to mean the "occurrence of a condition of non-occupancy" — that the word "cease" should be construed as though it read "cease or fail."
Such a construction or interpretation would, in effect, raise the same estate, by implication, in the event of contingency No. 3 as are expressly provided by the will in the event of contingency No. 2.
So also, what has been said as to contingencies Nos. 2 and 3, applies with equal pertinence, and with the same force and effect, as to contingencies Nos. 4 and 5.
Similarly, the third paragraph of the "fourth" clause of the will, if its effect be limited strictly and exactly in accordance with its language, provides only for contingency No. 6, *Page 290 
and not for contingency No. 7 — it directs the trustee to convey upon the happening of the husband's death, after the trustee has acquired the title and the power to convey, which would beafter the death of testatrix. It does not expressly direct the immediate conveyance, if the husband be already dead at the death of testatrix.
No one would contend, however, for a moment but that under the language of that paragraph, there is implied an equitable devise of the remainder, as well whether the husband predeceases testatrix or dies subsquently.
Let us now recur to consideration of contingency No. 1 — the one which has happened. We have, as already pointed out, the general scheme and intent that the country estate was intended for the daughters, subject to life estate in the husband; that the Greenhouse Tract was a part of the country estate and was excepted from the devise of that estate only in order that Henry might continue its occupancy as long as he desired it for his business and paid reasonable rent; and we also find in the special provisions of clause fourth, which were made in order to provide that Henry should have the right and opportunity so to continue its occupancy, the same idea and intent that except for Henry's right to occupy the tract should go to the husband for life and at the death to the daughters.
First — the beneficial enjoyment is not given to Henry; he is given only the right to occupy if he continues his business there, and pays the specified reasonable rent.
Second — in all of the contingencies expressly provided for in the will, the same provision is made that if and when Henry does not occupy, the husband is to have the beneficial use and occupation for life and at his death it is to go to the daughters if they survive. Furthermore, by clause fifth, if and while Henry does occupy, the rent paid by him goes to the husband.
If Henry dies before the testatrix and the husband survives — there is no possibility of occupancy by Henry — the will gives the tract to the husband for life and at his death to the daughters. *Page 291 
If Henry dies before the testatrix, and the husband likewise — there is no possibility of occupancy by Henry — there is no possibility of life estate in the husband — and the tract goes to the daughters.
If the husband predeceases, and Henry survives — there can be no life estate in the husband — Henry has the right to occupy, but if and when he fails to occupy, the tract is given to the daughters.
If both the husband and Henry survive, Henry has the right to occupy, if and when he fails to occupy, the husband being still living, the tract goes to the husband for life and at his death to the daughters.
If both the husband and Henry survive, and Henry occupies untilafter the husband's death, the will fails to make an express provision that the tract shall go to the daughters at the termination of Henry's occupancy, or any other express provision. But can there be any reasonable doubt — in view of the entire will, and in view of the fact that in every other instance she has expressly given the remainder to the daughters — that she desired and intended, even if she has not expressly said so, that in this event also, the remainder should go to the daughters?
If the husband had not merely predeceased Henry's termination of occupancy, but had predeceased testatrix also, the testatrix has said that the tract should go to the daughters. In both instances there would have occurred precisely the same material circumstance, i.e., the termination of Henry's occupancy without the husband living to enjoy a life estate. Can it be reasonably supposed that testatrix intended to differentiate between these two instances, and to have a different disposition of the remainder in the one instance from that in the other?
If the remainder does not go to the daughters in the actual instant contingency, it must pass under the residuary trust provisions and become a part of the residuary trust fund which remains in the trust to be divided into four parts, each child to get the income from one part and the principal of that part to go at each child's death to his testamentary appointee. *Page 292 
How is it intelligently to be supposed that the testatrix desired such a disposition in this single instance, when in every other contingency she desired the tract to go to the daughters? If that can be supposed, it must by the same token necessarily also be supposed, that the testatrix intended to make this differentiation — a differentiation based solely on whether her husband predeceased her or survived her, because all other factors are the same in both instances — even if her husband lived only an hour after she herself died.
It is recognized, of course, that an estate by implication cannot be raised upon mere conjecture (Peoples National Bank,c., v. Tipper, 100 N.J. Eq. 431), nor upon mere probability.Barnard v. Barlow, 50 N.J. Eq. 131. There are numerous other decisions in this state to the same effect. Gifts by implication are distinctly not favored by the courts. To justify the declaration of a gift by implication, the implication must be based upon necessity or a probability of intent, so strong that a contrary intention by testator cannot be supposed. Bishop v.Ex'rs of McClelland, 44 N.J. Eq. 450; Barnard v. Barlow,supra, approved as to this principle, on appeal. Barlow v.Barnard, 51 N.J. Eq. 620.
On the other hand it follows, conversely, that if, in a given case, such a strong probability of intent is found — if the court is convinced beyond any reasonable or intelligent doubt that such an intent did exist — then the gift by implication should be adjudicated.
In the instant case it is apprehended that the probability of intent is of the requisite strength to justify the adjudication of the gift by implication; that the existence of such an intent by testatrix appears from the whole will as a practical certainty and beyond any reasonable doubt. The probability seems much stronger in the case sub judice than in Holton v. White,23 N.J. Law 330, where the supreme court found it sufficiently strong to justify the implication of gift.
It is, however, urged by complainant — if its argument in this behalf is correctly apprehended — that in order to support a finding of gift by implication, there must exist words in the will — some particular clause or phrase, ambiguous or imperfect, *Page 293 
which can form the basis of the expression of the gift contended for, and can by modification or interpretation (on the finding of the requisite probability of intent), be construed into an expression of the gift.
Or the complainant's argument may perhaps more clearly be expressed in this way: The testatrix has made express testamentary provisions covering each possible contingency except the one which has happened. The will contains no provision whatever (except the residuary clause) as to this contingency, and the court is powerless to interpolate one, even though it is absolutely convinced from the entire will that the disposition contended for by defendants was desired by testatrix, and would have been expressly provided by her if she had realized that such provision had been omitted.
Complainant cites, inter alia, Vice-Chancellor Backes inTyndale v. McLaughlin, 84 N.J. Eq. 652: "But the will must furnish the basis of the construction. If a testator through ignorance, intention or inadvertence, fails to dispose of all his estate, it is not within the power of the court to supply the means. The province of the court is to construe, not make wills," and Schouler on Wills (6th ed. ¶ 1175): "Estates may be created by implication based on language implying an intention to make a bequest, but no estate can be created by implication without words on which it may be based. A remainder over must be clear * * *."
This argument of complainant, however, is deemed unavailing — for two reasons.
In the first place, it is conceived that it is not necessary that there be any particular clause or phrase which can be altered or amended by construction or interpretation into an expression of the implied gift. It is of course true that thewill itself must furnish the basis of the construction; it is of course necessary that the requisite probability of the testator's intent to make the gift, be found from the words and language of will itself. But it is sufficient if that probable (practically certain) intent is found from the words and language of the whole will. It has been laid down, so repeatedly as to need no citation, that the intent of the testator is to be obtained from the whole will. *Page 294 
In Holton v. White, supra, the interpretation by the court of gift of the Oak Island property to Eli, by implication, is in effect an interpolation of an entire expression into the will which contained no clause or expression whatever, which could in any wise be deemed a provision in that behalf, imperfect, ambiguous or otherwise.
In the classical instance of gift by implication, where testator says "after the death of A, I give my estate in fee to B" (B being the heir), there is no clause or provision which can be construed into a provision expressing the gift of a life estate to A or to anyone else. The interpretation of a gift of a life estate to A is, in effect, an interpolation of a clause expressing such a gift.
Courts in interpreting ambiguous or imperfect testamentary dispositions constantly interpolate (or strike out) one or more words. There is no difference in principle between the interpolation of a few words and the interpolation of an entire clause — if the requisite justification therefor exists.
Suppose a testator should execute a will which stated: "I appreciate the devotion and respect which each of my four sons, James, John, Joseph and William, has always shown to me and to my wife. Each of them has an equal share in my affections and an equal claim upon my bounty, and I intend that each of them shall share equally in my estate, subject to the provision I desire to make for my wife and parents.
"To that end, I give all of my estate to the Blank Trust Company, in trust (with directions for the payment of income for life to the wife and parents).
"At the termination of the last of said life estates, I direct my trustee to convert all of my estate into cash, and divide the same into four equal parts, and to pay over the said parts, one to my son, James, one to my son, John, one to my son, William."
Here there is no gift of one of the parts to the son Joseph, or to anyone else, nor any gift to Joseph. To accomplish a gift to Joseph it is necessary by interpretation, to interpolate a clause of gift to him, into the will. But it will scarcely be contended that any court would hesitate to raise a gift by implication to Joseph of one-quarter of the remainder. *Page 295 
In the instant case, the expression of intent in the will is not expressed so concisely nor with such absolute definiteness as in the supposititious case, but that is not necessary. It is sufficient if the intent be clearly found in the whole will.
In the second place, it is not necessary to interpolate a clause, by construction, into this will in order to accomplish the expression of the result which we have found testatrix to have intended. That result can equally well be attained by a slight rearrangement of the clauses in the paragraph numbered (1) of the three paragraphs quoted at the commencement of these conclusions — so that the gift of the remainder is not made conditional upon Henry's cessation of occupancy occurring during the life of the husband.
Or it can be attained by omitting entirely (as surplusage and not in accordance with the real intent of testatrix) the clause "and during the life of my husband."
It is clear that what testatrix meant to say in this paragraph was —
"If my husband survive me and my son shall cease or fail to occupy the tract, then I direct my trustee, if this is during the life of my husband, to permit my husband to occupy the tract during his life, and upon his death, or if he be then dead, to convey the same absolutely to my daughters, c."