208 P.2d 1081

**BROWN et al. v. BROWN et al.**

No. 5187.

Supreme Court of New Mexico.

Aug. 15, 1949.

H. A. Kiker, Charles C. Spann, Santa Fe, for appellants.

Crampton & Robertson, Raton, for defendants-appellees.

Krehbiel & Stevens, Clayton, for executors-appellees.

BRICE, Chief Justice.

This action was brought as authorized by Ch. 143, N.M.L.1935, secs. 25-601 et seq., N.M.Sts.1941, commonly called the Declaratory Judgment Act; the principal purpose of which was to obtain the construction of a joint will.

The action was brought by Henry J. Brown and Charles M. Brown as executors of the last will and testament of Frances Brown, deceased. The defendants named are all of the heirs at law of John Thomas Brown and Frances Brown, both deceased, and Alta M. Brown, the widow of a deceased son. Answers were filed by (1) Jay T. Brown, Jr. and Alta M. Brown, son and widow respectively of Jay T. Brown, Sr., deceased, who was the son of John Thomas and Frances Brown; and (2) by Henry J. Brown, Charles M. Brown, Albert S. Brown, and Lora F. Sumpter, all children of John Thomas and Frances Brown; each joining in the prayer for the construction of the will.

The facts necessary to a decision are as follows:

On the 3d day of January, 1930, John Thomas Brown and Frances Brown, husband and wife, made, executed and published their joint last will and testament, which (except formal parts) is in words and figures, as follows:

"We, John Thomas Brown and Frances Brown * * * do hereby make, publish,

and declare this to be our last will and testament, joint and mutual, * . * *

"(Item One) We and each of us direct that all just debts and funeral expenses be paid by the survivor hereof as soon after the decease of either of us can conveniently be done.

"(Item Two) That we, and each of us upon the death of either of us do give, devise and bequeath to each of our five children or the issue thereof, if any, the sum of $50.00 in cash to be paid to the devisees as soon as reasonably possible by the survivor, the said children being, Albert Sylvester Brown, Henry J. Brown, Jay T. Brown and Charles Moses Brown and Lora Frances Sumpter.

"(Item Three) That we and each of us do give, devise and bequeath to which of us shall survive the other, all the rest, residue and remainder of our estate, real, personal and mixed, wheresoever situate, or possessed, or to which the first deceased may be entitled at the time of decease, not herein otherwise disposed of, to have and to hold during the natural life of the survivor, with full power of management and disposal, except as to alienation of real estate, all subject to the following conditions.

"(Item Four) Subject to the life estate created in item three hereof, we do at the time of the decease of the survivor hereof give, devise and bequeath to Henry J. Brown, our son, or to his issue the ranch known as the Long Canyon Ranch, with the State Contracts and leases in connection therewith, and to our son Jay T. Brown, the ranch known as the Cimarron ranch with the State contracts and leases in connection therewith, and the ranch known as the Emery Gap Ranch to our sons Henry J. Brown and Jay T. Brown, share and share alike; all of the above devises being subject to the conditions and provisions of the following item, personal property on each ranch to pass with the ranch.

"(Item Five) The devises in item number four are to be governed by the following conditions: That at the time of the death of the survivor, and the termination of the life estate the estate both real and personal shall be appraised by three appraisors hereinafter named, and divided by the said appraisors into five equal shares, which shares shall go to each of our said above named children or the issue thereof, and the devisees named shall have possession of the said ranches for five years rent free, except for lease rental, payments on State contracts and taxes, within which time, on or before the said five years they shall pay to each of the heirs not receiving the same estates the full amount of the pro-rate one-fifth of the appraised value of their portion of the estate, with legal interest to date of payment and the Probate Court of Union County, New Mexico, shall

retain jurisdiction of this will until the payments shall have been made and on evidence thereof shall decree the devisees named of the ranches to be the owners thereof.

"(Item Six) We do hereby make, constitute and appoint James Todd, Andrew Hamilton, and Harold W. Taylor, as appraisors and in the event any of the above shall be deceased or legally incapacitated, then and in that event the Probate Judge of Union County, New Mexico, shall appoint a disinterested party to fill the vacancy.

"(Item Seven) We direct that should any of the devisees be indebted to the survivor at the time of survivors decease, that such debt, however represented, shall be considered a part of the estate, and deducted from the share of the debtor.

"(Item Eight) We further direct that in case of simultaneous death of us both, this will shall be carried into execution the same as if one should have survived.

"(Item Nine) Should any of the devisees herein die without issue but leaving a surviving husband or wife, the surviving husband or wife shall receive the devisee's part of the estate. * * *"

All of the property owned by the testator and testatrix belonged to their community estate.

The joint last will and testament executed January 3, 1930, by John Thomas Brown and Frances Brown was the result of a joint agreement had between said decedents concerning the intended disposition of their community property, and that following the death of John Thomas Brown and the conclusion of the probate of said joint will and testament, his widow, Frances Brown, accepted, had and enjoyed all the testamentary benefits throughout the remainder of her lifetime, including all of the rents, issues, and profits from their said community property, and including also the life estate in the property of John Thomas Brown as provided for in said will.

The plaintiffs are the duly appointed, qualified and acting executors of the estate of Frances Brown, deceased, under a will made subsequently to that copied herein.

On or about April 10, 1930, John Thomas Brown died leaving surviving him as his heirs at law, his widow, Frances Brown, and his five children, Henry J. Brown, Jay T. Brown, Charles M. Brown, Albert S. Brown and Lora F. Sumpter. The joint will was admitted to probate by the probate court of Union County, New Mexico, as the last will and testament of John Thomas Brown, and a final decree was entered on September 14, 1931, wherein it was determined that Frances Brown, widow, was the owner of all of the personal property of the estate of the said John Thomas Brown, and also was the owner of a life estate "in all of the real estate owned by the said

John Thomas Brown at the time of his death, and that his sons and daughter are the owners of the undivided remainder of the said property composing the real estate, subject to the terms and qualifications made in his last will and testament herein probated."

On July 17, 1935 Frances Brown married one W. J. Brown, who thereafter died on December 7, 1945 in Trinidad, Colorado. After his death Frances Brown made, executed, published and declared another instrument hereinafter referred to as the Trinidad will, to be her last will and testament.

Jay T. Brown, son of John Thomas Brown and Frances Brown, died intestate on the 24th day of February 1937, leaving surviving him as his only heirs at law his widow Alta M. Brown and his son Jay T. Brown, Jr. His estate was administered in the probate court of Union County, New Mexico.

Frances Brown died in Trinidad, Colorado, November 23, 1946, leaving surviving her as her only heirs at law, the four sons hereinbefore named and her grandson Jay T. Brown, Jr., and the daughter. The Trinidad will was admitted to probate in Colorado and thereafter in Union County, New Mexico, in which proceedings the plaintiffs were appointed as executors thereof. Frances Brown died seized of the property in Colorado and Texas which was acquired by her primarily as a result of her remarriage to W. J. Brown.

On December 19, 1946, the defendants made and entered into a written contract agreeing that the Trinidad will should be admitted to probate as the last will and testament of Frances Brown, deceased, and that the joint will should be the basis of distribution of all property owned by Frances Brown at the time of her death or in or to which she had an interest at the time of her death, excepting the real and personal property owned by her within the city of Trinidad, Colorado, and all land owned by her in the State of Texas and the contents of her safety deposit box in the First National Bank of Trinidad, which Trinidad and Texas property was acquired by Frances Brown primarily as a result of her remarriage to W. J. Brown.

The Court's finding of fact No. 10, which is herein contested, is as follows: "That during her lifetime Frances Brown loaned to her son, Jay T. Brown, Sr., the sum of $1500.00 and on May 1, 1935, as evidence of such indebtedness the said Jay T. Brown, Sr. executed and delivered to Frances Brown his promissory note in that amount, a true copy of which note is attached to the petition herein, marked Exhibit H, and by reference made a part of the petition; and that thereafter and during the lifetime of Frances Brown the said Jay T. Brown, Sr. and his wife, Alta M. Brown,

rendered valuable assistance and services in full payment of said promissory note and in full accord and satisfaction of the same."

The trial court made the following conclusions of law:

"1. That the rights of the parties hereto in respect of the matters mentioned in the foregoing findings of fact should be declared and adjudicated by the court.

"2. That the contract designated Exhibit D is a valid contract binding upon all the parties hereto; that pursuant to said contract, the said joint last will and testament, designated as Exhibit A, controls the distribution of all property in the State of New Mexico, both real and personal, belonging to Frances Brown at the time of her death or in or to which she had an interest at the time of her death.

"3. That the devise to Jay T. Brown, Sr. of the ranch known as the Cimarron ranch with the state contracts and leases in connection therewith and the devise to Jay T. Brown, Sr. of an one-half interest in the ranch known as the Emery Gap ranch, all as set forth in Item Four of said joint will, created vested remainders in said Jay T. Brown, Sr., which vested in him during his lifetime, so that said devises did not lapse because of his death prior to the death of Frances Brown.

"4. That all rights and interest of the said Jay T. Brown, Sr. under said joint will and in respect of the subject matter thereof, including all his rights and interest in respect of the Cimmaron ranch and the Emery Gap ranch, have passed to and are now held and owned by his heirs, Jay T. Brown, Jr. and Alta M. Brown, the said Jay T. Brown, Jr. having a three-fourth interest therein and the said Alta M. Brown having a one-fourth interest therein.

"5. That the provisions of said joint will concerning the appraisement of the assets of the estate are valid and should be enforced; that James Todd, one of the appraisers named in said will, by reason of his long absence from Union County, New Mexico, and his long sojourn in distant places should be deemed legally incapacitated within the meaning of Item Six of said joint will, and the vacancy thus created should be filled by appointment by the Probate Judge of Union County, New Mexico.

\* \* \* \* \* \*

"8. That the indebtedness of $1500.00 and the promissory note evidencing the same, designated Exhibit H, owing by Jay T. Brown, Sr. to Frances Brown was fully paid, satisfied and discharged during the lifetimes of the said J. T. Brown, Sr. and Frances Brown; and no part of said indebtedness remains owing or unpaid."

The trial court entered its decree in conformity with its findings and conclusions. Among the adjudications it was ordered, adjudged and decreed as follows:

"That the joint last will and testament of John Thomas Brown and Frances Brown, a copy of which is attached to the petition in this cause, marked Exhibit A, controls the distribution of all the property, both real and personal, belonging to Frances Brown at the time of her death or in or to which she had an interest at the time of her death, excepting only real and personal property owned by her within the City of Trinidad, Colorado, all land owned by her in Texas, and the contents of her safety deposit box in the First National Bank of Trinidad.

\*     \*     \*     \*     \*     \*

"That the devise to Jay T. Brown, Sr. of the ranch known as the Cimarron ranch with the state contracts and leases in connection therewith and the devise to Jay T. Brown, Sr. of a one-half interest in the ranch known as the Emery Gap Ranch, all as set forth in Item Four of said joint will, created a vested remainder in the said Jay T. Brown, Sr., which vested in him during his lifetime, so that said devises did not lapse because of his death prior to the death of Frances Brown.

"That all rights and interest of the said Jay T. Brown, Sr. under said joint will and in respect of the subject matter thereof, including all his rights and interest in respect of the Cimarron ranch and the Emery Gap ranch, have passed to and are now held and owned by his heirs, Jay T. Brown, Jr. and Alta M. Brown, and said Jay T. Brown, Jr. having a three-fourths interest therein and the said Alta M. Brown having a one-fourth interest therein.

"That the power of sale conferred on the executors by the terms of the so-called Trinidad will does not have any application to any land and real estate or state leases which are governed by the terms of the joint will.

\*     \*     \*     \*     \*     \*

"That the indebtedness of $1500.00 and the promissory note evidencing the same, a copy of which is attached to the petition in this cause, marked Exhibit H, owing by Jay T. Brown, Sr. to Frances Brown was fully paid, satisfied and discharged during the lifetimes of said Jay T. Brown, Sr. and Frances Brown; and no part of said indebtedness remains owing or unpaid."

The controversy is between the defendants Jay T. Brown, Jr. and Alta M. Brown, appellees, and the other defendants, who are all of the living children of John Thomas Brown and Frances Brown, appellants.

It is asserted by appellants that the trial court erred in his conclusions and decree which are to the effect that Jay T. Brown, Sr. was by the terms of the joint will given a vested remainder (after a life estate in Mrs. Brown had terminated)

in certain real property described in Item Four of the joint will, so that upon the death of Jay T. Brown, Sr. the vested remainder descended to the appellees, who were his only heirs at law.

Appellants state their point as follows: "Under the joint will, Henry J. Brown and Jay T. Brown each had an option, and an option only, to purchase certain real estate within five years after the death of the survivor of the testators. Neither had, or has ever had, a vested interest in any real estate."

The question is whether the devise of real property by Item Four of the joint will to Jay T. Brown, Sr., (a son and heir at law of testators) who died intestate subsequent to his father's death and prior to the death of his mother, lapsed at the time of his death or passed to his heirs.

If Jay T. Brown was given a mere option to purchase as appellants assert, then it was a personal right which expired at his death, and his option did not pass to his heirs. Valley Bank & Trust Co. v. Williams, 46 Ariz. 20, 46 P.2d 645; Daly v. Daly, 299 Ill. 268, 132 N.E. 495. But if a vested remainder in the ranch property was devised to Jay T. Brown, as the appellees assert, and the trial court concluded, then it passed to his heirs at his death. Mohn v. Mohn, 148 Iowa 288, 126 N.W. 1127; In re Gray's Estate, 27 N.D. 417, 146 N.W. 722, L.R.A.1917A, 611. The question as it relates to the interest of John Thomas Brown's half interest in the community property will be first decided.

In construing a will, the intention of the testator as expressed in the script must prevail if consistent with law. Smith v. Bell, 6 Pet. 68, 31 U.S. 68, 8 L.Ed. 322; In re Estate of Weiss, 224 Wis. 192, 271 N.W. 918; Wentworth v. Fernald, 92 Me. 282, 42 A. 550. If a provision in a will is in unambiguous language and reasonably susceptible to but one meaning which is consistent with all other provisions of the will, that meaning must prevail, and a different intention cannot be established by resort to rules of construction. Burwell v. Cawood, 2 How. 560, 11 L.Ed. 378; Maddock v. Haines, 7 Cir., 88 F.2d 350, 112 A.L.R. 279. The meaning of the will in suit is not clear and the language is ambiguous; and if necessary to determine the intent of the testators we will resort to both the surrounding circumstances of its execution. Cleveland Clinic Foundation v. Humphrys, 6 Cir., 97 F.2d 849, 121 A.L.R. 163, and the established rules of construction. 2 Page on Wills, Lifetime Ed., Sec. 916.

We eliminate certain words of the will for its better understanding, as follows:

By Item Three the testators "give, devise and bequeath to the survivor (except $50 to each of their children) all * * * of our estate, real, personal and mixed,

\* \* \* or to which the first deceased may be entitled at the time of decease \* \* \* to have and to hold during the natural life of the survivor, subject to the conditions stated in Items Four and Five.

Item Four provides that "subject to the life estate created by Item Three, we do, at the time of the decease of the survivor, give, devise and bequeath to Henry J. Brown, our son, and to his issue" certain described real property, and " \* \* \* to our son Jay T. Brown" certain other described real property. These devises are to be governed by the conditions stated in Item Five.

Item Five provides:

(1) "That at the time of the death of the survivor and the termination of the life estate, the estate both real and personal be appraised \* \* \* and divided \* \* \* into five equal shares", one to go to "each of our said above named children or the issue thereof."

(2) That "the devisees named (Henry J. Brown or his issue, and Jay T. Brown) shall each have possession of the respective ranches devised to him, for five years, rent free (with stated exceptions); within which time (on or before five years) they shall pay to each of the heirs not receiving the same estates (that is real property), the full amount of the pro rate one-fifth of the appraised value of their portion of the estate with legal interest to date of payment."

(3) That "the probate court of Union County, New Mexico shall retain jurisdiction of this will until the payments shall have been made, and on evidence thereof shall decree the devisees named of the ranches to be the owners thereof."

■ We are of the opinion that by the provisions of the joint will Mr. Brown's half interest in the Cimarron Ranch with the state contracts and leases in connection therewith, and a one-half of his half interest in the Emery Gap Ranch, were vested in Jay T. Brown, Sr. upon the death of his father. Our reasons for this conclusion will now be stated.

■■ By Item Three of the joint will, Mrs. Brown as survivor, was devised a life estate in the whole community property, notwithstanding she owned a half interest in it; the effect of which will be hereafter considered. The will by its terms (Item Four) purports to devise certain real property to Jay T. Brown, Sr., and in no place therein is there a suggestion that "an option to purchase" the devised property was intended. The law favors the vesting of estates, and in the absence of any words in a will clearly expressing a different intent, a devised estate will be construed as having vested at the earliest possible moment, which in this case was at the death of John Thomas Brown.

Jacobs v. Ditz, 260 Ill. 98, 102 N.E. 1077; Harrison v. Marden, 298 Mass. 148, 10 N.E.2d 109, 112 A.L.R. 577. We construe the language in Item Four, "subject to the life estate created in Item Three, we do, at the time of the decease of the survivor hereof, give, devise," etc. as not postponing the time of the vesting of the estate until the death of the survivor. It is presumed that words of postponement relate to the time of the enjoyment of the estate, and not to the time of its vesting, unless the intention to postpone the vesting of the estate is clear and certain from a consideration of the will as a whole; and we do not find evidence of such intention that is clear or certain.

The authorities are so numerous on the question that we are content to cite the following: Stevens, Exr., v. Carroll, Admx., 64 Or. 417, 129 P. 1044, L.R.A.1918E, 1095, and appended annos.; Grace v. Continental Trust Co., 169 Md. 653, 182 A. 573, 103 A.L.R. 589, and annos. at pp. 598 et seq; 4 Thompson on Real Prop., Perm. Ed., Secs. 2216 et seq.

"Words of futurity, apparently importing a contingency, are often construed as contemplating a present devise of a remainder with right of enjoyment only after the future event. Where a particular estate is created by will, with a remainder over upon the happening of an event, the words descriptive of the event are construed as referring merely to the period when the enjoyment of the prior estate determines, and not as designed, in the absence of express words or a manifest intent to that effect, to postpone the vesting of the remainder over. * * * Thus, the provision in a will giving a life estate to the testator's widow, with the further provision that at her death the principal or remaining property is to revert to the heirs and legatees named, creates vested remainders in such heirs and legatees." 33 A.J., Life Estates, Etc., Sec. 110.

The vesting of title to the ranches was fixed by the will, but a plan to equalize the estate was provided for to be effective as of the date the legatees and devisees or their issue should come into possession and enjoyment of the estate, which to us seems not inconsistent with the earlier vesting of title to the ranches. It was a fair and reasonable way to make the apportionment.

After providing for the division of the estate at the death of the survivor, in five equal parts "which shares shall go to each of our above named children, or the issue thereof," it continues " * * * and the devisees named shall have possession of the said ranches for five years rent free except for lease rentals, payment of state contracts and taxes, within which time, on or before the said five years, they shall pay to each of the heirs not receiving the same

estate (that is, real property) the full amount of the pro rate one-fifth," etc.

The words "rent free," are inconsistent with a prior devise, but likewise the words "We * * * devise and bequeath * * * to our son Jay T. Brown, the ranch known as the Cimarron ranch" are inconsistent with a mere option to purchase. It was the apparent intention of the testators by this language to give the children to whom they devised real property five years in which to earn or procure the necessary funds for paying the amount required to equalize the "shares" of the several legatees. The enjoyment provided for was that of owners, not persons holding options to purchase. It was provided that the amount which the devisees were required to pay to the legatees to equalize the "shares" should bear legal interest to the date of paying, indicating a present enjoyment of their interests as owners.

A further provision of Item Five, it is asserted, indicates that the estate of Jay T. Brown was not vested at the death of the testator. It is the following: " * * * the probate court of Union County, New Mexico shall retain jurisdiction of this will until the payments shall have been made and on evidence thereof shall decree the devisees named of the ranches to be the owners thereof."

That any such decree of the probate court would be ineffective is certain.

Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000. This is admitted by appellants; but it is asserted that as this provision is inconsistent with an intention to devise the ranches to be effective at the death of the testator, it indicates a different intention. That assertion has merit; but we are trying to arrive at the intention of the testators, notwithstanding numerous conflicting and ambiguous provisions.

The real property in question was devised to Jay T. Brown, Sr. and it is not provided that upon the happening of some event it shall not vest in him. He is required to pay certain funds within five years, with legal interest, to equalize the estate among the devisees and legatees; but if he does not pay the amount required, no provision is made for a forfeiture of the devise. The testators intended that two of the sons, no doubt those best qualified to handle the ranch property, should have it, but that each of testators' children should receive a share of equal value with the others. The amount necessary to equalize the shares was intended to be a charge against the ranch real property, as we construe the will.

A similar case is Henderson v. Gray, 27 N.D. 417, 146 N.W. 722, L.R.A.1917A, 611. The will of John D. Gray provided that his wife should have a life interest in certain real property. Then, "III. Subject to the aforesaid life interest of my wife,

Julia Ann Gray, and the following further provisions: (a) That within two years next succeeding the death of my wife, Julia Ann Gray, he pay or cause to be paid unto my daughter, Ruth Beleal, or her heirs, the sum of fifteen hundred dollars ($1,500); (b) that he pay or cause to be paid unto my daughter, Myra Pieldman, or her heirs, within two years next succeeding the death of my wife, Julia Ann Gray, the sum of fifteen hundred dollars ($1,500), I will and bequeath unto my son, Arthur Pierce Gray, or his heirs, the north one-half of section twenty-eight, township one hundred forty, range sixty."

A similar provision required George Henry Gray to pay $500 to each of two children, and "I will and devise" him certain described real estate. It was asserted that as no provision was made for any disposition of the real estate in case Arthur Pierce Gray or George Henry Gray failed to pay the money to the other heirs, the devise was void. But the court thought otherwise. It said:

"As we construe the will, the premise upon which both counsel first argued the case in this court, to wit, that such real property was devised to the sons, Arthur Pierce and George H. Gray, upon conditions precedent that they should pay certain bequests to Ruth Beleal and Myra Pieldman, daughters, and to James Burley Gray, a son of the testator, is clearly erroneous. If correct in this conclusion, it necessarily follows that such devises were made either upon conditions subsequent or merely subject to a charge upon the estates devised in favor of such legatees for the amounts of such legacies, and in either event the question argued in the original briefs, of the suspension of the power of alienation, cannot possibly be involved. We are firm in the belief that the testator merely intended to make such legacies charges against the estates.

"We are confirmed in this belief by the provisions of the will. On the theory that the testator intended to make such devises subject to conditions precedent, it is quite natural that he would have made some provision for the vesting of title elsewhere, in the event such conditions were not complied with, but the will is silent in this respect. Furthermore such conditions could not be complied with until after the termination of the life estate in the mother, for such are the plain provisions of the will; and yet no provision is made for an abiding place for the title during the interim between the mother's death and a compliance with such conditions, which might be a period of two years."

The North Dakota court cited numerous decisions in the Henderson case to like effect, among them the following: Casey v. Casey, 55 Vt. 518; McCarty v. Fish, 87 Mich. 48, 49 N.W. 513; Hogg v. Brown-

ing, 47 W.Va. 22, 34 S.E. 754; In re Korn's Will, 128 Wis. 428, 107 N.W. 659; McNally v. McNally, 23 R.I. 180, 49 A. 699; Perry v. Hale, 44 N.H. 363. Also see: Jacobs v. Ditz, 260 Ill. 98, 102 N.E. 1077; Spangler v. Newman, 239 Ill. 616, 88 N.E. 202.

"The requirement in a will that one to whom a remainder is given shall pay a sum of money to a third person or for the benefit of the estate is generally held not to be a condition precedent to vesting of the remainder, particularly where the testator makes no provision in regard to the disposition of the estate in case of the failure of the remainderman to make payment. The remainder, if otherwise vested, vests subject to the condition or charge. Such a provision may be held to be a condition subsequent or not to constitute either a condition precedent or subsequent, but to constitute a charge or trust in favor of the person or persons to whom the money is to be paid, so that the remainder vests unconditionally. * * *" 33 A.J., Life Estates, Etc., Sec. 92.

We are of the opinion and so hold, that John Thomas Brown's half of the real property devised to Jay T. Brown, Sr. by Item Four of the will, vested in him at the time of his father's death.

A more difficult question is whether the community interest of Mrs. Brown in the same property vested in Jay T. Brown, Sr.

at the time of the death of his father. Mrs. Brown revoked the will by executing another in which she cut off her grandson, the defendant Jay T. Brown, Jr. with a dollar. It is agreed by the parties that this will does not affect the property owned by Mr. and Mrs. Brown at the time the former died, but that Mrs. Brown was bound by the contract made, the terms of which were incorporated into the will afterwards executed by both. The terms of the contract must be inferred from the will and surrounding circumstances.

When the will was executed it became binding on the survivor if she accepted the benefits provided for her in the will. Schauer v. Schauer, 43 N.M. 209, 89 P.2d 521; McDonald v. Polansky, 48 N.M. 518, 153 P.2d 670; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; and extended note following the last cited case, 169 A.L.R. p. 11 et seq. The parties agree that such contract was made, and that Mrs. Brown "accepted and enjoyed all of the testamentary benefits throughout the remainder of her life, including all of the rents, issues and profits from their said community property." The husband fully performed his contract, and died without making any other disposition of his property. The survivor caused the will to be probated, qualified as executrix and accepted its contractual and testamentary benefits until she died. The contract was binding on her and her estate.

The contract to make the will, the terms of which are arrived at from the surroundings and the will itself, was made in substance as follows: It was agreed that at the death of the first to die the survivor should have a life estate in all the community property except a nominal sum given each child. He (or she) could dispose of the personal property at will, but not the real estate. Each child's part should be equal in value with the others. Two of the sons, Henry J. Brown and Jay T. Brown, who probably had assisted their father for years on the ranches, should be given the remainder in the ranches and the personal property that would be thereon at the date of the survivor's death; but that the two should pay for the interest that otherwise would have belonged to the other three. As a proper division could not be made until the death of the survivor it was agreed at that time an appraisement should be made and values established. As the ranches and personal property thereon constituted the larger part of the estate, a division among the heirs could not be made except by requiring Henry J. Brown and Jay T. Brown to pay to the other children the amount necessary to equalize values among them. It was agreed that this should be done. To accomplish this, it was agreed that these two sons should be required to procure the funds with which to pay the others their part, within five years after the death of the survivor, and that the amount due each should bear interest at the legal rate.

No provision was made for a lapse of the devise of the real property for failure to pay the debt with interest, that would be due the other three children, or at all. But a decree of the probate court establishing their ownership should be withheld until the payment was made. It is this contract and not the will, that bound Mrs. Brown and her interest in the community property.

In this state the wife's interest in community property belongs, upon her death, to the husband without administration. Sec. 31-108, N.M.Sts.1941. The wife is without power to dispose of her interest by will. But the husband's half is subject to his testamentary disposition. In the absence of a will, the wife retains her one-half interest and one-fourth of the husband's half goes to her (or five-eighths of the whole), and the remaining three-eighths goes to the children in equal shares if there are children. Sec. 31-109, N.M. Sts.1941. In the absence of a will Mrs. Brown would have had only one-half of the estate as survivor, whereas Mr. Brown would have owned it all had he been the survivor, and could have disposed of it by will or otherwise as pleased him. The arrangements made by them for the disposition of the community property after death were much to Mrs. Brown's advantage.

The contract and will each provided that the survivor should accept a life estate in the whole property. If the survivor should be Mrs. Brown (as it was), her income for life would be doubled. She would have complete dominion over the personal property; but without power to sell the real property, the remainder in which was devised to Henry Brown and Jay T. Brown. The legal title to her half interest in all of the property, including the devised ranches, remained in Mrs. Brown. The question is whether by the terms of the contract she held the legal title to the devised real property for the devisees named in the will, after she had accepted the benefits of the provisions of the will favorable to her. This we conclude was the intention of the parties, and in the absence of some legal impediment we should hold that the equitable title to the remainder in the ranch property devised to Jay T. Brown vested in him at the death of his father, and was irrevocable after Mrs. Brown had accepted the benefits of the will, if not at the time of John Thomas Brown's death.

A similar case is Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998, 999. The facts necessary to an understanding of the case are substantially as follows: John and Harriet Baker (husband and wife) made their joint will. They each owned separately forty acres of land; the homestead was in John's name. It was stated in the will that the property bequeathed and devised was held "by us jointly, share and share alike, both real and personal, and it is our wish that the one of us surviving shall hold the same and have the use and benefits thereof * * * during the period of his or her natural life, and it is accordingly by us so bequeathed and devised unto the survivor of us during the period of the survivor's natural life." It was then provided that after the death of the survivor, the homestead on which they resided "should become the property of Belle Syfritt * * * during her life, and we do therefore devise the property aforesaid to her, * * * for her use and benefit during the period of her natural life, with remainder at her death to her children. If she dies without issue surviving her, then remainder to our residuary legatees." It was provided that after the death of the survivor and the payment of their debts, "It is our wish that the rest, residue and remainder of our estate, real and personal, left thereafter, shall descend and rest in our beloved children (naming them) share and share alike in fee simple." Harriet Baker died and her husband caused the will to be probated as her last will and testament and was the executor thereof. He took and held possession of the estate, used the rents and profits of all the property during the remainder of his life. After his first wife died he married a second time, and upon his death his sur-

viving widow brought this suit claiming one-third of the property devised in the joint will, as her dower. The defendants, except Belle Syfritt, were the children of Baker and his first wife. The Iowa court stated:

"They (the defendants) further allege and claim that, while testamentary in form and in some of its effects, said joint instrument constituted a valid contract between the husband and wife for the present transfer of their common estate to the beneficiaries named therein, reserving to themselves and to the survivor of them a life estate in all said property, and that upon the death of Harriet Baker and the probate of her will without objection made thereto by the said John Baker, and his acceptance of the benefits of the provision thereof made in his favor, said contract became irrevocable * * *. It is further alleged that by virtue of. said contract between the husband and wife, and by the acceptance by said husband of the benefits thereof after the death of the wife, all of said property became and was in his hands a trust fund for his use during his life, and for the preservation of the principal thereof for the benefit of the named beneficiaries at his death, and that said trust was in fact accepted and performed by him. * * *

"The validity of the will now before us is not seriously questioned, but the claim is made by appellant that, conceding the validity in other respects, it did not affect the title or interest of John Baker in the land during his lifetime; that it was at all times revocable by him, and that, being seised of the title at and after the date of his marriage with plaintiff, her right of dower therein cannot be affected by the devise made in the will. Upon the point thus made hinges the disposition of this case. While the legal title to the lands in controversy was held by John Baker and Harriet Baker in severalty, they declare in express terms that they were in fact owners of it all jointly, or in common and equal right. The record does not disclose, but we may, perhaps, assume, that the property represented the fruit of their joint labors and efforts, and that, recognizing their obligations to each other, they were willing each to concede to the other an equal right in their accumulations. They had the authority to thus deal with their own, and we think the court is bound to treat the property as being at the date of the will the common estate of husband and wife. * * *

"Now it is evident that where two persons unite in a joint will, whereby the survivor takes some benefit from the estate of the one first deceased, and such provision is coupled with another by which, subject to such right in the survivor, the estate of both is devised to a third person, there is an element of contract and mutual obligation

between the makers, and when that devise becomes irrevocable, if it ever does, then there arises a vested right in the beneficiary of which he cannot be arbitrarily deprived. It has been held by some authorities that such a will cannot be revoked by either maker without notice to the other. * * * But however that may be, where one maker of such will dies before a revocation thereof by either, and the survivor accepts any benefit thereunder, we think it quite clear that he can no longer revoke, and that any attempt by him to divert the common estate in any other direction than is indicated by the common or joint devise is nugatory. * * *

"That the owner of property may by contract, or by conduct which estops him from denying it, transmute his legal title into a trust for the benefit of another person is too well settled to require discussion. * * * where two persons competent to make testamentary disposition of property enter into a compact or agreement by which they unite in devising their joint or several estates to a designated third person, subject to a life estate in the survivor, and upon the death of the one the survivor avails himself of the benefits of the devise in his favor, he must in equity be treated as holding the title in trust for the purpose indicated in the compact, which became irrevocable upon the death of the other party thereto. * * *

"Coming a step nearer to the case in hand we see no good reason why husband and wife may not agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into the legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right, or, at worst, when the maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or part to the defeat of the common purpose. * * *

"From whatever angle we approach the instrument in controversy we are led to the same conclusion that from the death of Harriet Baker and the probate of her will at the instance of John Baker, and his acceptance of its benefits, if at no earlier date, he held the title in trust for the beneficiary named in the writing. * * *"

Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 166, 169 A.L.R. 1, is similar, in that community property was disposed of much as in the instant case. Bradford and wife executed a joint will. The third paragraph bequeathed and devised to the survivor all of the property which either shall own "to be owned and held by said survivor during his or her lifetime, with remainder

over to our beloved children." The children were Mrs. Florrie Nye and Robert Bradford. Another paragraph devised and bequeathed to their children, share and share alike, all other property that "we may own at the time of our respective deaths, subject only to the life estate of the survivor of us as above provided." The right to sell any property was reserved to the survivor. Bradford died in 1941 and Mrs. Bradford qualified as executrix. In 1943 Mrs. Bradford deeded as a gift to Mrs. Nye the property in controversy as "her own separate right and estate" and the grantor reserved a life estate. Mrs. Bradford died a month later and the joint will was admitted to probate as her will. Mrs. Nye claims title to the property in controversy through the deed to her from Mrs. Bradford. Robert Bradford claims title to one-half of it under the joint will of his parents, contending that Mrs. Bradford was not authorized to give the remainder to Mrs. Nye; that "the rights of the remaindermen could not be taken away from them except in accordance with the terms of the will. A gift of property is not a sale. The conveyance, if a gift, was not authorized by the power that the will conferred upon the survivor." The Texas court said:

"The will is jointly executed and speaks in all of its paragraphs as the joint act of the testators. Together they bequeath and devise their property, all of which is community property. Nowhere do they separately devise or bequeath their interests in the property * * *. The will does not dispose of the property generally to the named devisees, but it carefully makes separate specific devises of certain designated real estate to each of the two children. * * * The division made is apparently equal, treating the two children exactly alike in the accomplishment of the agreement to which the witness testified. The will treats the property of the testators as one, and the dispositions made are joint gifts from the testators, dividing the property equally between the two children. * * *

"The husband, R. T. Bradford, fully performed his contract. He died without having undertaken to revoke the joint will and without having attempted to make any disposition of the property in contravention of the agreement. The surviving wife, on her own application, caused the joint will to be probated as the last will and testament of her deceased husband and qualified as executrix under the will. Thereupon the contract, even if it had theretofore been voidable (and as to that we express no opinion), became obligatory upon her."

It was held that Mrs. Bradford's deed was void under the contract between the testators.

See Schauer v. Schauer, supra; In re Bryson, D.C., 49 F.2d 408; Seat v. Seat, 172 Tenn. 618, 113 S.W.2d 751; Tellez v. Tellez, 51 N.M. 416, 186 P.2d 390; Torgerson v. Hauge, 34 N.D. 646, 159 N.W. 6, 3 A.L.R. 164.

At the time of the death of John Thomas Brown the remainder, after a life estate in Mrs. Brown, of Mrs. Brown's interest in the ranch property devised to Jay T. Brown by Item Four of the joint will, vested in Jay T. Brown. It follows that the remainder in the whole of the real property vested at that time in Jay T. Brown. Mrs. Brown held the legal title in trust for the remaindermen, who owned the equitable title.

Whether the devise lapsed or not, the result will be the same insofar as it affects appellants. The contract provided (as the will provides in Item Five) that each of the children, or their issue, shall receive an equal share of the estate. It is then provided of what the respective shares shall consist. The issue (Jay T. Brown, Jr.) of Jay T. Brown, succeeds to his share, which according to our construction of Item Five, and the contract, (if the title did not vest upon the death of John Thomas Brown) gives Jay T. Brown, Jr. title to the ranch property devised to his father by Item Four, burdened with the debt he is required to pay to equalize the shares. No question is raised as to the respective rights of the appellees as between themselves, and we will assume that the decree of the district court is acceptable to each of them.

There is one other question to be determined. The trial court's finding No. 10 is as follows: "That during her lifetime Frances Brown loaned to her son Jay T. Brown, Sr., the sum of $1500 and on May 1, 1935, as evidence of such indebtedness the said Jay T. Brown, Sr., executed and delivered to Frances Brown his promissory note in that amount, a true copy of which note is attached to the petition herein, marked Exhibit H, and by reference made a part of the petition; and that thereafter and during the lifetime of Frances Brown, the said Jay T. Brown, Sr. and his wife, Alta M. Brown, rendered valuable assistance and services to the said Frances Brown, who accepted said assistance and services in full payment of said promissory note and in full accord and satisfaction of the same."

Regarding this finding of fact the court concluded as follows: "That the indebtedness of $1500 and the promissory note, evidencing the same, designated Exhibit H., owing by Jay T. Brown, Sr. to Frances Brown was fully paid, satisfied and discharged during the lifetimes of the said J. T. Brown, Sr., and Frances Brown; and no part of said indebtedness remains owing or unpaid."

Item Seven of the will is as follows: "We direct that should any of the devisees be indebted to the survivor at the time of survivor's decease, that such debt, however represented, shall be considered a part of the estate, and deducted from the share of the debtor."

That Jay T. Brown, Sr. borrowed from his mother $1500 and gave his note therefor, dated May 1, 1935, is undisputed. No question is raised as to this note not being a part of the community estate of John Thomas and Frances Brown, and we will assume that it was. It seems to be so treated by the parties.

On this question the appellants make the following point: "There is no evidence to show that Jay T. Brown and his wife after making the promissory note for $1500 (Ex. H.) rendered valuable assistance and services to said Frances Brown, and that Frances Brown accepted said services and assistance in full payment of said promissory note and in full accord and satisfaction of the same; and except for payment in full Frances Brown had no right to cancel the note."

Frances Brown was not authorized to cancel this note as a gift, according to the terms of Item Seven, supra. As the claim that payment was made affects the estate of a deceased person, the testimony of an interested person must be corroborated.

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence." Sec. 20-205, N.M.Sts.1941.

The evidence given to support the alleged payment of this claim is substantially as follows: The defendant Alta M. Brown testified that she was the widow of Jay T. Brown, that she heard a conversation between the witness Mrs. William Miller and the deceased Frances Brown, in October, 1936. Speaking of Mrs. Frances Brown, the witness stated, "But I did hear her say that Jay had been up to Trinidad to settle with her and that she refused to accept his money because she felt she already owed that to Jay for services he had rendered to her in former years."

"Q. What about the services your husband had rendered to his mother? A. Well, it wasn't only to his mother; he rendered services to his mother and father for a number of years. We lived close to the folks, and it wasn't only Jay's services, I rendered my service, and I made a cowboy for them for years, and worked in the hay field, and worked at raking, and anything, wherever they needed my service, and

mother felt she owed this amount to us for the things we had done."

She testified that after his mother moved to Trinidad in 1932, Jay T. Brown looked after her business in New Mexico until he passed away in 1937. Mrs. Brown leased the ranches and was not in business in New Mexico after she moved to Trinidad. Witness' husband (Jay T. Brown, Sr.) looked after the payment of taxes and state lease rentals and any business that needed attention.

"Q. During those years the extent of the services he rendered his mother was to find out what the taxes were and draw a check to pay them? A. I suppose so."

Rentals were paid to Mrs. Brown by Mr. Henderly; but the witness knew nothing about the rent Henry J. Brown paid to his mother.

It is admitted that Frances Brown in her lifetime filed this note as a claim against her son Jay's estate for collection. This was in 1937.

Now it is claimed that the testimony of Mrs. William Miller corroborated that of Mrs. Alta Brown. Mrs. Miller testified that she had a conversation with Mrs. Frances Brown in October 1936 at the ranch house, in which Mrs. Brown stated to her, "Jay offered to pay me in May 1936 what was due me and I refused to accept the money because I owed Jay more than

he could ever repay me, and I am destroying the note. If it had not been for Jay and Alta I would not have a roof over my head today;" that Jay T. Brown handled the cattle and ranching business at the home place, which is referred to as the Cimarron place, which he operated for his mother the entire time witness knew him. These services were rendered from 1931 until 1936.

That the services performed by Jay T. Brown for his mother from 1932 until his death in 1937 were merely small favors, such as payment of taxes and state rentals, appears from Mrs. Alta Brown's testimony. Mrs. Miller's assertion that Jay T. Brown ran the Cimarron ranch from 1931 to 1936 is an obvious mistake. The ranch was rented out and operated by a Mr. Henderly during that time, except during 1931. There is substantial corroboration only of Mrs. Alta Brown's statement to the effect that she heard Mrs. Frances Brown say to Mrs. Miller in October 1936 that Jay had gone to Trinidad the previous May and offered to pay the note, but that she had refused to accept his money because she felt that she owed it to Jay for services he had performed in former years. It is not shown that she was legally indebted to him for any services performed for her. The note was given after these alleged services were performed. It was not destroyed, but was filed by Mrs. Frances

Brown as a claim against Jay's estate, who died the following February. Mrs. Alta Brown says the services (at least partially) were performed for her husband's mother and father. Obviously such services were not a debt of the survivor. We are of the opinion that this is no substantial evidence to prove any indebtedness due to Jay T. Brown by Mrs. Frances Brown; that at most he had performed gratuitous services for her, which for the previous four years had been nominal, on account of which she felt she should cancel the note without consideration. If Item Seven of the will did not deprive Mrs. Brown of the power to cancel the note as a gift; then it was not cancelled by any act of hers, as the agreement to cancel (if any) was not in writing, and void by the provisions of the following statute: "The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." Sec. 53-253, N. M.Sts.1941. Nelson v. Hudson, 221 Mo. App. 211, 299 S.W. 1111; McGlynn v. Granstrom, 169 Minn. 164, 210 N.W. 892.

The decree of the district court is affirmed except as to paragraph 13 thereof, in which it is decreed that the $1500 note had been paid; and reversed and remanded as to it, with instructions to the district court to reform its decree to conform herewith.

The appellees and appellants shall each pay half the costs incurred by this appeal.

It is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.