SARAH F. MARTIN, Admx., *et al.* Appellees, *vs.* JAMES C. MARTIN, Appellant.

*Opinion filed June 22, 1916.*

1. WILLS—*how the intention of the testator is to be determined.* The intention of the testator is to be determined from the language of the entire will, considered in the light of the facts and circumstances surrounding the testator, his family and his property at the time of making the will.

2. SAME—*when devise by implication will be sustained.*. A devise by implication will be sustained though not made by the will in formal language, when the probability of the intention of the testator to make the gift is so strong that a contrary intention can not be supposed.

3. SAME—*when the presumption against intestacy will prevail.* The presumption that a testator did not intend to die intestate as to any part of his estate but intended that it should all be disposed of in his will must prevail where there are no provisions of the will or matters of evidence to overcome such presumption.

4. SAME—*when the doctrine of equitable conversion applies.* Where the testator gives the use of certain land to his wife while she remains his widow, directs that at her death the land shall be sold, makes provision for distributing the proceeds, and provides that if the wife shall marry again her interest in the land shall cease and the same "shall be sold and divided as above directed in case of her decease," the doctrine of equitable conversion applies and the distributees take the proceeds of the sale of the land and not the land itself.

5. SAME—*will construed as disposing of remainder.* A provision in a will written by a justice of the peace that at the death of the testator's wife the land shall be sold "and that Robert A. Martin and George E. Martin shall pay to James C. Martin the sum of $1000 if he is living at the time of the death of my wife, Fannie Martin, but if James C. Martin should not be alive at the time of my said wife's decease, then the proceeds of the sale of said farm to be equally divided between my two sons, Robert A. Martin and George E. Martin," following which is a provision that if the wife shall re-marry the land be sold and divided "as above directed in case of her decease," gives the proceeds of the sale to George E. Martin and Robert A. Martin, equally, subject to payment by them of $1000 to James C. Martin if he is alive, and does not leave the fee intestate property in case James C. Martin is alive.

APPEAL from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

CLAUDE C. FLANSBURG, and LEONARD A. FLANSBURG, for appellant.

JOHN W. DUBBS, for appellee Sarah F. Martin.

PERRY D. TRIMBLE, (CAIRO A. TRIMBLE, of counsel,) for appellee Robert A. Martin.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Bureau county in a proceeding in chancery to construe the will of Andrew Martin, deceased, and for the appointment of a trustee to sell land and distribute the proceeds.

Andrew Martin died testate March 5, 1891. He left surviving him a widow, Fannie Martin, and three sons, James C., Robert A. and George E., his only children and heirs-at-law. His will was executed on January 24, 1887. The third clause of the will (the only part of it in controversy and the provision out of which this lawsuit arises) is as follows:

"*Third*—I give and devise to my wife, Fannie Martin, while she remains my widow, the use of the following real estate, to-wit: The south half fraction of the northeast quarter and fraction of the southeast quarter of section twelve (12), township eighteen (18), north, in range eleven (11), containing one hundred and twenty-one acres, and at the death of my wife I direct that the farm be sold, and that Robert A. Martin and George E. Martin shall pay to James C. Martin the sum of $1000 if he is living at the time of the death of my wife, Fannie Martin, but if James C. Martin should not be alive at the time of my said wife's decease, then the proceeds of the sale of said farm to be equally divided between my two said sons, Robert A. Martin and George E. Martin, to share and share alike. If my

said wife, Fannie Martin, should at any time after my decease again marry another man, then all her right and interest in my real estate shall cease and the same be sold and divided as above directed in case of her decease."

On March 20, 1915, George E. Martin died intestate, leaving no children or descendants of children but leaving surviving him as his heirs, his widow, Sarah F. Martin, his mother, Fannie Martin, and his two brothers, James C. and Robert A. Martin. His widow, Sarah F. Martin, was appointed administratrix of her husband's estate and she filed the original bill in this case. The will of Andrew Martin was probated March 11, 1891. His widow was nominated sole executrix in the will but never qualified and no letters testamentary were ever issued nor was the estate administered. Fannie Martin, the testator's widow, died October 7, 1915, and after her death the bill in this case was filed by Sarah F. Martin, as administratrix and heir of her husband, George E. Martin. The construction contended for in the bill was that the land was required to be sold at the death of the testator's widow, and after the payment to James C. Martin of $1000, the remainder of the proceeds was to be equally divided between George and Robert Martin.

James C. Martin answered the bill, denying that the construction contended for by complainant was the correct construction of the will, and also filed a cross-bill, claiming that by the proper construction of the will the remainder, after the termination of the testator's widow's estate, was not disposed of by the will, but that by the terms of the will if James C. Martin was alive at the termination of the widow's estate his brothers were directed to pay him $1000, but no disposition was made by the will of the fee in the event of James C. Martin being alive at the termination of the life estate, and that the provision for the sale of the property and the distribution of its proceeds between Robert A. and George E. Martin was only to be effective in

the event James C. Martin died before the widow's life estate terminated. That contingency did not happen, and it is now contended by said James C. Martin that the testator's land descended to him and his two brothers in equal shares, subject to a charge of $1000 against the shares of his brothers, to be paid to him. The cross-bill prayed for partition.

The cause was heard by the chancellor upon the pleadings and a stipulation of facts. It was stipulated the land in controversy was worth $9000 at the time the will was executed; that James C. Martin left home in 1876 and has not since lived on the farm or with his parents. Appellant states in his brief he was then twenty-seven years of age, Robert A. twenty-two years of age and George E. ten years of age. Robert and George continued to live with their parents until their father's death, and afterwards, until the death of George, they both lived on the farm with their mother, and Robert so continued until her death. It is further stipulated that James C. worked on the farm with his father and his brother Robert until he left home, in 1876, except during seven or eight winters when he taught school; that in 1876 Andrew Martin bought eighty acres of land in Nebraska for $900 and about a year afterwards conveyed it to James C. for $450. It is further stipulated the will was drawn by a justice of the peace who was not a lawyer.

The court found that all the debts of Andrew Martin had been paid in full and construed the will to require that the land should be sold; that James C. Martin be paid $1000, and that the remainder of the proceeds be given to Robert A. and George E. Martin. The court further found that Sarah F. Martin, administratrix of the estate of her husband, George E. Martin, succeeded to his share and interest as personal property belonging to the estate of her deceased husband; that the land was not subject to partition, and a trustee was appointed to sell it and report the

sale to the court within ten days, and that upon the approval of the sale the trustee execute a deed to the purchaser. Out of the proceeds of the sale the trustee was ordered to pay all costs and expenses, pay $1000 to James C. Martin, and pay one-half the remainder to each Robert A. Martin and Sarah F. Martin, administratrix. James C. Martin has prosecuted this appeal from that decree, and says in his brief the errors assigned may be disposed of by determining (1) whether Andrew Martin disposed of all his estate and property by will, and (2) whether the doctrine of equitable conversion of the land into personal property applies.

It would seem to necessarily follow that if the correct construction was given the will by the circuit court the doctrine of equitable conversion applies. The familiar and fundamental rule which governs in the construction of a will is, that it must be so construed as to give effect to the intention of the testator when such intention is not in violation of any rule of law or of public policy. The intention of the testator is to be determined from the language of the entire will, considered in the light of the facts and circumstances surrounding the testator, his family and property, at the time of making the will. (*Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561; *Hoffner* v. *Custer,* 237 id. 64; *Mills* v. *Teel,* 245 id. 483; *Wallace* v. *Foxwell,* 250 id. 616; *Strickland* v. *Strickland,* 271 id. 614.) The surrounding circumstances at the time the will was made appear from the stipulation of facts above set out. The land was first devised to the widow so long as she remained unmarried. At her death the will directed that the land be sold. That was the plainly expressed intention of the testator and was not dependent upon James C. Martin surviving the widow. When her estate terminated the land was to be sold and converted into money. While it is not plainly so expressed in the will, the necessary implication is that the $1000 Robert and George were

required to pay James was to be paid out of the proceeds of the sale. There is nothing in the will to indicate that the testator intended that Robert and George should pay that bequest out of their individual means, or that the land was to be considered intestate property and descend to the three sons equally and the bequest to James made a charge against the shares of Robert and George. The will explicitly says if James is not living at the termination of the life estate the proceeds of the sale (the previous direction to sell is not repeated in this connection) shall be divided equally between Robert and George. It is beyond question that the testator intended the land to be sold at the death of the life tenant. Any other construction would be in conflict with the clearly expressed intention of the testator. It seems equally clear that he intended James should be paid $1000 therefrom and that Robert and George should have the remainder. The whole provision disposing of the land after the death of the widow is contained in one sentence. The will was written by a justice of the peace, and while the sentence is awkwardly arranged, no reasonable construction can be put upon it except that the testator intended the land to be sold at the death of the life tenant, and after James, if living at that time, was paid $1000 the remainder should be divided equally between Robert and George, and if James pre-deceased the life tenant the whole of the proceeds should be equally divided between them. That the testator intended to dispose of, and thought he had disposed of, the land by his will is made manifest by the last sentence of clause 3, which provides that if the widow should marry, all her right and interest should cease and the land "be sold and divided as above directed in case of her decease." It would be absurd to say the direction that the land "be sold and divided" did not mean that it was to be sold and the proceeds of the sale divided. How had the testator "above directed" that the proceeds of the sale be divided? Equally between Robert and George if James was not living, but if

he was alive he was to be paid $1000 and the remainder
should go to Robert and George.  While the first part of
the devise of the remainder does not explicitly say that
after paying James the $1000 the remaining proceeds shall
be divided between Robert and George, that is the neces-
sary implication from all the language of clause 3, and only
by giving it that construction can effect be given the in-
tention of the testator.  A devise by implication will be sus-
tained though not made by the will in formal language,
when the probability of the intention of the testator to
make the gift is so strong that a contrary intention cannot
be supposed.  *Connor* v. *Gardner,* 230 Ill. 258, reported in
15 L. R. A. (N. S.) 73, where an exhaustive note will be
found; *O'Hearn* v. *O'Hearn,* 114 Wis. 428; *Post* v. *Ho-
ver,* 33 N. Y. 599.

The construction given the will by the chancellor, and
which we think was correct, is further strengthened by the
presumption of law that where a man dies testate it will
be presumed he intended by his will to dispose of all his
property and leave no part of his estate intestate.  Unless
this presumption is rebutted by the provisions of the will
or evidence showing a contrary intention it will be given
effect.  It will not be permitted to overcome the expressed
intention of the testator appearing from the language of
the will, but it will be applied and acted upon where it will
give effect to his intention.  *Hayward* v. *Loper,* 147 Ill. 41;
*Greenwood* v. *Greenwood,* 178 id. 387; *Eyer* v. *William-
son,* 256 id. 540; *Wixon* v. *Watson,* 214 id. 158.

Under the construction we have given the will the sons
of the testator did not take the land by the devise but took
the proceeds of its sale, and the doctrine of equitable con-
version applies.  *Greenwood* v. *Greenwood, supra; Lash* v.
*Lash,* 209 Ill. 595; *Dorsey* v. *Dodson,* 203 id. 32; *Baker*
v. *Copenbarger,* 15 id. 103.

The decree of the circuit court is affirmed.

*Decree affirmed.*