(No. 14075.—Decree affirmed.)

WILLIAM DALY *et al.* Appellants, *vs.* JAMES DALY, Appellee.

*Opinion filed October 22, 1921.*

1. WILLS—*a testator may divide his property unequally among his heirs.* A testator may lawfully divide his property among his heirs as he may see fit, and where a testator gives two of his four sons a first option to purchase certain of his real estate at $60 per acre, the fact that, owing to the advance in the value of land, the price named is inadequate does not justify disregarding the option clause, even though there is a subsequent provision in the will for a 'division among the four sons of the proceeds of a sale of the land in case the option is not exercised.

2. SAME—*effect of provision giving devisee option to purchase.* A will may give an option to purchase property of the estate at a price named, and where such option is exercised by the beneficiary in accordance with the terms of the will he becomes invested with the title to the property, but the title does not vest until the option is exercised, and the devisee must take the land at the value fixed.

3. SAME—*when a devisee is entitled to construction of will by cross-bill—costs.* A devisee whose interest under a will is being attacked by a bill to construe it is entitled to have a construction of the will settling the question of his title by filing a cross-bill, and if successful he will be entitled to recover his costs in the case.

4. PLEADING—*when a cross-bill is necessary.* Where a defendant relies on his answer, alone, he can use the equity of his case only for the purposes of defense, but if he wishes affirmative relief with reference to the subject matter of the original bill he must file his cross-bill.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. F. J. STRANSKY, Judge, presiding.

HARRY C. TEAR, and R. R. TIFFANY, for appellants.

SHEEAN & SHEEAN, and M. J. DILLON, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellants filed their bill asking construction of the fifth clause of the will of John Daly, deceased, averring that that clause should be construed to mean that the land designated therein should be sold either to James or William Daly or others at its market value and not at the price of $60 per acre named in the will. Appellee filed a cross-bill, averring that said clause of the will gave him an option to take the land at the price of $60.per acre if he so desired; that he had exercised that option, and prayed that the will be so construed as to vest in him the title to the land, subject to the payment of $60 per acre therefor. The circuit court by its decree dismissed the original bill and granted the relief prayed in the cross-bill, and appellants bring the cause here on appeal.

The will in question was executed September 1, 1900. The testator died March 26, 1904. The second clause devised to the wife of the testator, Ellen Daly, certain real estate described therein and the use of all the remainder of the estate of the testator, real, personal and mixed, for her use during her natural life, and 'that she have full control of the same, without interference by anyone. The third clause devised and bequeathed, after the death of the wife, legacies to three daughters named therein, in the sum of $500, and $1000 to Dr. John Daly, a son. The fourth clause devised and bequeathed unto James Daly, a son, one team of horses, one wagon and one set of double harness. The sixth clause nominated and appointed the wife, Ellen

Daly, and son James Daly, executors of his last will and testament without bond, empowering them, or either of them, to sell, in case it became necessary, any or all real estate and to make good and sufficient deeds to the same. The fifth clause of the will is as follows:

· *"Fifth*—I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, after the death of my said wife and the payment of the above mentioned legacies in the third and fourth clauses of this my last will and testament, unto my four sons, viz., William Daly, Patrick Daly, Thomas Daly and James Daly, in the manner following, to-wit: I desire that my son William Daly take the following described real estate at $60 per acre, to-wit, [describing 87 acres]; and I further desire my son James Daly to take all that remains of my real estate at $60 per acre. I desire that my said sons James and William pay to my sons Patrick and Thomas their shares in said real estate in payments of $500 each, annually, without interest, until they shall have paid my son Patrick Daly one-fourth of my estate devised in this the fifth clause of my will, less $1000 which he has already received as an advancement, and my son Thomas Daly one-fourth of my estate devised in this the fifth clause of my will. I further direct that in case my sons William and James shall not desire to take any of my real estate at $60 per acre, then Patrick and Thomas may have the opportunity of taking my real estate at said price, and in case neither of my last mentioned four sons shall desire said real estate at the price mentioned, then I desire that my real estate be sold and the money be divided in the same proportions between my four sons, William, Patrick, Thomas and James Daly, share and share alike, except Patrick Daly, who I desire shall receive $1000 less than my sons Thomas, James and William Daly."

The decree construed said clause as vesting in James Daly, by reason of his election to exercise the option given

him, an estate in fee simple of 204¼ acres of land, subject to the payment of said legacies and subject to the payment of $60 per acre, and that by the payment by James of $60 per acre in cash, as he stood ready to do, sufficient funds were available of the estate to pay the legacies provided for in the will and all claims against said estate, and that the balance of such payment should be distributed in equal shares among William, Patrick, Thomas and James Daly, except that Patrick should receive $1000 less than Thomas, James and William. The decree further provided that William having accepted the provisions of the fifth clause of the will and offered to pay $60 per acre for 87 acres, became seized in fee simple of the same, subject to the charge thereon of $60 per acre; that William make annual payments to Patrick, Thomas and James of $500 each, in accordance with the terms of the will.

The principal question presented in this case arises on the construction of the fifth clause of the will of John Daly, and particularly that portion in which the testator says, "I desire that my son William Daly take the following described real estate at $60 per acre," describing a certain tract of land containing 87 acres, and "I further desire that my son James Daly to take all that remains of my real estate at $60 per acre," which the evidence shows to be 204¼ acres. The amount to be paid for this land is by this clause of the will divided equally among the four sons, subject to the payment of the legacies given by the will. This clause also directs that in case the sons William and James shall not desire to take any of the real estate at $60 per acre, then the other two sons, Patrick and Thomas, may have the opportunity of taking the real estate at that price, and in case none of the four sons desire to take the land at the price mentioned, he directs that it be sold and the money divided among his four sons, share and share alike, except as to Patrick, who is to receive $1000 less than the others.

Appellants contend that it was the intention of the testator to make an equal division of his property, and that the only way in which that can be done is by a sale of the property and a division of the proceeds equally, for the reason that the property, since the making of the will, has advanced very materially, and that unless this be done James and William will receive a very decided advantage in the division of the real estate. On the other hand, it is claimed that the will provides for an option, first to James and William, and if they do not elect to take advantage of it, then to the testator's sons Thomas and Patrick, and in the event none of them care to exercise such option the land will be sold by the executor.

It is so well settled in this State as to require no citation of authority, that in construing wills the intention of the testator is sought and must be carried into effect unless to do so would violate some settled rule of law or public policy. John Daly, the testator, at the time he made his will had a wife, five sons and three daughters. The second clause of his will gives to the wife 40 acres of land in fee and a life use of the remainder of his estate, real and personal. The third clause provides legacies for his daughters and his son John. The fourth clause leaves a team of horses, harness and wagon to his son James. In the clause under discussion here, by nominating a fixed price of $60 per acre and giving to James and William the first option to purchase the balance of his land, amounting to 291¼ acres, at that price, there was evidently an intention on his part to prefer them. There is no rule of law which prohibits a testator from dividing his property, as to the amount given to each of his heirs, as he may see fit. There are many considerations, such as advancements or opportunities given certain of his children and not others, which may lead a testator to give more of his estate to the latter than to the former. Whatever may have been the reason in this case, there is nothing in the law which

prohibits his preferring one child over another, and the fact that the opportunity to purchase this land at $60 per acre may give James and William a decided advantage over the others, owing to the advance in the price of the land, does not, of itself, tend to prove that he did not intend to do just that thing.

There is no provision in the will that in case James and William should elect to take the land it shall be sold at the market price at the time when they were to go into enjoyment of the same, and this court has no authority to write such a provision into it. The only contingency under which the testator directed that the market price should be had for the land was that none of his sons should choose to take the land at $60 per acre, in which event the executor was to sell. But appellants urge that the provision in this clause that the land should, in the event that none of the sons desired to take it at $60 per acre, be sold and the money divided "in the same proportions between my four sons, [naming them,] share and share alike, except" Patrick's advancements, when taken with the language of the clause concerning an equal division of the proceeds in case William and James do elect to take the land at $60 per acre, shows an intention on the part of the testator that his land, aside from the 40 acres devised to his widow, should be divided equally among four sons. We cannot agree with this contention. In both of the instances where he uses language concerning equal division it is of the proceeds. In one it is the equal division of the proceeds arising out of the sale to the sons at $60 per acre, and the other is the equal division of the proceeds arising from a sale by the executor, which is to occur, as we have seen, in case the sons do not elect to take the land at $60 per acre. There is nothing in this clause which indicates that the testator intended that when his sons should exercise the option to take the land it should bring the market value. He fixed the price at $60 per acre, and had a right to do so. That

he contemplated that it might prove an advantage to his sons to take the land at that price is indicated by the fact that he offers the option first to James and William, and if they do not exercise it, then to Thomas and Patrick. The effect of these provisions of the fifth clause of the will was to give to his sons, in the order named, an option to take the land at the price named in the will. The fee of the land, under such provision, did not vest until such option was exercised.

While the right of a testator to give an option to his children to purchase land at a certain price has not been directly passed upon in this State, yet it has been before the courts of last resort of other States. In the case of *Watson* v. *Riley,* 101 Neb. 511, a very similar state of facts arose, the provision of the will there under consideration being as follows: "It is my will that the said Emma L. Watson shall have the right to take the following described land [here follows description of 160 acres] for the sum of $50 per acre. The said Emma L. Riley [Watson] shall be allowed on the said purchase price of said land the sum of $12.50 per acre, or if her bequest shall amount to more than the sum of $12.50 per acre, then she shall be allowed upon the said sum of $50 per acre the sum of her entire inheritance, to be deducted from said sum of $50 per acre." It was there held that an option to purchase property of the estate at a price named in the will may be created by will; that where such option is exercised in accordance with the terms of the will by the beneficiary he becomes invested with the title to such property by the will. To the same effect are *Snyder* v. *Snyder,* 75 Iowa, 255, *Thomas* v. *Kelly,* 16 Am. Rep. (S. C.) 716, and *Albright* v. *Albright,* 128 Pa. St. 381. In *Parker* v. *Seeley,* 56 N. J. Eq. 110, the testator gave to his son, after the death of his mother, who was given certain land for her life, the right to purchase the dwelling house and a portion of the lot upon which the house stood, for $8000. The property was worth

much more than $8000. It was there held that such was an option given to the son to purchase, which he had a right to exercise and take the property at that price. In *Chamberlain* v. *Berry,* 56 S. W. (Ky.) 659, it was held that where a testator fixes a value upon land devised for the purpose of division under the will the devisee must take the land at the value fixed if he takes it at all. In this case the sons James and William elected to exercise the option given them by the will, and having done so, were entitled to the land under the terms of the will, and the chancellor was right in so decreeing.

Appellants also complain because their demurrer to the cross-bill was overruled, it being their contention that the cross-bill was not properly filed, since the relief prayed for could have been had under the original bill, and that the cross-bill would gain nothing and was unnecessary. The rule is, that where a defendant relies on his answer, alone, he can only use the equity of his case for the purposes of defense, but if he wishes to become the assailant and seek affirmative relief with reference to the subject matter of the original bill he must file his cross-bill, and in this way, and this way alone, is he permitted to use his equity as a weapon of attack. (Puterbaugh's Ch. Pl. & Pr.—6th ed.— 370, 371; *Hamalle* v. *Lebensberger,* 267 Ill. 602.) Appellee had a right, upon the original bill being filed in this case, to have a construction of the will settling the question of his title, as that was attacked in the original bill. Had appellants dismissed their original bill, it would then have been necessary for appellee to file a bill to have the will construed, in order to remove any doubt as to his title. The chancellor did not err in overruling the demurrer to the cross-bill.

Appellee had a right to recover his costs in the case.

The decree of the circuit court will be affirmed.

*Decree affirmed.*