(No. 32013.—

HELENA MARIA STERN *et al.,* Appellants, *vs.* WALTER T. STERN *et al.,* Appellees.

*Opinion filed November 27, 1951.*

JACOB CANTLIN, and SAMUEL RUBIN, both of Rock Falls, for appellants.

WARD & WARD, of Sterling, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiffs, Helena Maria Stern, Oscar R. Stern, and Delores Stern Nelson, and defendant, Mary Lou Finkle, are appealing from a decree of the circuit court of Whiteside County, construing the will of Henry W. Stern, deceased, and ordering the division, sale, and distribution of decedent's estate substantially in accordance with the interpretation of defendants, Walter T. Stern, Emma M. Stern, Edwin Stern, Glenn Stern, Paul Stern, Elda Taylor, and Lola Hunsberger.

The salient inquiry presented by this cause is whether, under the terms and provision of the will of Henry W. Stern, the option given the testator's son Carl to purchase a specific tract of land, of which Carl was the lessee, within a designated period, passed to Carl's descendants upon his death before exercising the option.

The operative facts are uncontroverted. The decedent, Henry W. Stern, executed the will involved herein in 1935, when he was 73 years of age, and his second wife was

59 years old. At that time he owned, in addition to his homestead and the tract upon which it was situated, a farm of 160 acres leased and occupied by his son Carl, and another tract which was farmed by his son Walter. All of the property had formerly been farmed by the testator with the help of these sons. The testator's family consisted then of his second wife and their son Oscar, age 20, and his two sons by his first marriage, Walter, age 59, and Carl, age 48, and the daughters of his deceased son Alfred. At the time the will was executed, Carl had five children, defendants Edwin Stern, age 22, Paul Stern, 21, Glenn Stern, age 14, and two daughters.

Carl and his wife had made substantial improvements on the leased premises prior to· the execution of the will in controversy, of which the testator was aware. Although the cost of these improvements is disputed, it appears that they included a cattle shed, a double garage, the installation of a bathroom and a complete water system, re-shingling the corncrib and laying a cement floor in it, installing a cement drive, and a cement floor in the cattle shed.

Under the principal provisions of the will, the testator, Henry W. Stern, bequeathed to his wife the household goods, $2500, and the income therefrom, the use of the home for and during her lifetime, and a specific per annum income from the operation of the farm lands. Subject to the foregoing provisions and the options provided in the will, the testator devised all of his real estate to the executor to be converted into money or securities, with distribution thereof to be made among the children in equal shares. The option clause provides:

"I hereby give to my son, Carl F. Stern, the option to purchase my farm land [legal description of tract 1]. Said option to purchase shall be at a price of $100.00 per acre and shall be in effect for at least two years after the date of my death and for at least one year after the date

of death of my said wife. Notice of the exercise of said option shall be given my executor within two years from the date of my death or within one year from the date of the death of my said wife whichever shall be the later period, and settlement shall be made by the first day of March next succeeding such notice."

Under the eighth clause of the will, the testator's son Walter is given a similar option to purchase tract 2, to be exercised within the same time limits, and on the same conditions. The ninth clause provides, in substance, that if either or both of said options are not exercised within the time specified the lands thus released from option shall be sold by the executor for the purpose of distribution of the proceeds thereof as provided in the fifth clause, except that said farm lands shall not be sold during the lifetime of the testator's wife. The tenth clause specifically states that the provision in the will for the benefit of the testator's wife shall be accepted by her in lieu of dower, homestead, widow's award, and all other rights that she would be entitled to in case of intestacy.

The eleventh clause provides: "All the rest, residue and remainder of my estate of every kind and character, I give, devise and bequeath to my children in equal shares, and in all clauses of this, my will, where I have made any gift or provision for my children, such terms shall be taken to include the descendants of any of my children who die prior to my death leaving descendants, such descendants to take their parent's share in equal shares, per stirpes."

The testator thereupon provided that certain charges be deducted from the shares because of advancements or obligations owed him by his children. Walter T. Stern and Oscar R. Stern are appointed trustees for the children of the deceased son Alfred, and the will establishes a trust on their behalf. Carl F. Stern is nominated as executor, and, in the event of his death, Walter T. Stern is designated.

The testator died February 18, 1949, and shortly thereafter on March 11, 1949, his son Carl died, leaving a will whereby his widow, Emma M. Stern, was designated as his sole heir and devisee. Both wills were admitted to probate on March 21, 1949, and Walter T. Stern was appointed executor of the will of Henry W. Stern, and Emma Stern was appointed executrix of the will of Carl F. Stern.

On June 29, 1949, Helena Maria Stern, the widow of Henry Stern, renounced the provisions of the will, and elected to take in lieu thereof her statutory share in the estate. This partition proceeding was thereupon instituted by her, her son Oscar, and Delores Stern Nelson, the daughter of the deceased son Alfred. In their prayer for relief, plaintiffs seek a construction of the will, particularly a determination that the option given Carl, under the seventh clause of the will, to purchase tract 1 at any time within one year after the death of the widow of the decedent, was personal to Carl, and cannot upon his death be exercised by persons claiming under him. Plaintiffs also request a sale of the premises if partition cannot be made, and a determination of the manner in which the option given Walter under clause 8 shall be exercised.

In their reply thereto, defendants assert that the option given to Carl under the will was not personal to him, but was an interest which passed to his widow, Emma, as his sole devisee, and may be exercised by her. In support thereof, defendants allege that in reliance upon the provisions of the will which were communicated to Carl during the lifetime of the testator, Carl continued in possession of tract 1 and made valuable and extensive improvements upon the property, which would not have been made except for the fact that Carl considered the word "option" in the will to be used in the sense of a contract to sell, otherwise he would have purchased other farm lands at that price and made similar improvements. A

similar claim was made by defendant Walter Stern with reference to the "option" granted to him. Defendants further asserted that the widow, by her renunciation, was entitled to take one third of each tract of land, but subject to the respective contracts of purchase, and that if a sale is directed, she is entitled only to $33 an acre from the proceeds.

The court allowed plaintiffs' motion to strike the parts of the answer referring to the improvements made by Walter and Carl, to the allegations that the word "option" was used as a contract in the will, and to the assertion that the widow was entitled only to one third of each tract, subject to the respective contracts of purchase.

Upon a hearing the court found that under the seventh clause of the will the option given to Carl to purchase tract 1 was not personal to him, but was an interest which passed to his descendants who are now entitled to acquire an undivided two-thirds interest in tract 1 for $100 an acre; that the rights of the parties have been accelerated by reason of the renunciation of the will by Helena M. Stern; that an undivided two-thirds interest in all the real estate is subject to the right of Walter T. Stern, as executor, to sell for the purpose of making distribution, but that the descendants of Carl may take title to an undivided two-thirds interest in tract 1 upon payment of $100 an acre, and that if said property is not susceptible to partition and is sold, then from the proceeds of the sale of the undivided two-thirds interest, the executor shall receive $100 per acre, and the descendants of Carl will be entitled to the proceeds above that amount; that Walter, having exercised his option, is entitled to similar rights with reference to tract 2.

In accordance therewith, the court ordered that title to an undivided one-third interest in tracts 1, 2, 3 and 4 is vested in plaintiff Helena M. Stern, who also has a homestead right, and that title to the two-thirds interest

is vested in the descendants of Henry W. Stern, subject to the terms of the will. The executor shall sell all of the real estate and divide the proceeds in the following manner: He shall sell to Walter Stern the remaining two-thirds of tract 2, as and if it is divided, for $100 per acre; he shall sell to the descendants of Carl the remaining two-thirds of tract 1, as and if it is divided, for $100 per acre, and he may sell the remaining two-thirds interest in tracts 3 and 4, as and if they are divided, at a public or private sale. In the distribution the shares of each child shall be charged with any indebtedness due the estate, and Oscar, Walter and Emma Stern shall each receive one sixth of the net amount, and Delores Nelson and Mary Lou Finkle will each receive one twelfth thereof.

The decree further provided that if the premises are not susceptible of division, and an order of sale is directed, the proceeds shall be distributed so that two thirds of the proceeds of the sale of tract 1, in excess of $100 per acre shall be payable to the descendants of Carl; two thirds of the proceeds of the sale of tract 2 in excess of $100 per acre shall be payable to Walter; two thirds of the proceeds of the sale of tracts 3 and 4, less the value of the homestead, and the sums of $100 per acre paid by Walter and the descendants of Carl, shall be payable to the executor; and one third of the proceeds of tracts 1, 2 and 4, and one third of the proceeds of tract 3, less the homestead, shall be payable to the plaintiff, Helena M. Stern.

From this decree plaintiffs have appealed. They contend that according to the unambiguous language of the will the option to purchase the property given to Carl was personal to him and cannot be exercised by his heirs or personal representative; that the court cannot consider surrounding circumstances for the purpose of varying an intention clearly expressed; and that the rights granted to Carl under the will are analogous to the rights of a spouse

to elect to take under the will, which may only be exercised by the survivor during his or her lifetime.

Defendants, however, maintain that in construing a will it is proper to consider all circumstances surrounding the testator, his purpose and motives, his relation to his beneficiaries, and the nature of the property, in order to properly determine the meaning of the words employed; that a technical construction of the words in a will may not defeat the general intent of the testator; and that there is a devise by implication in the will herein.

It is an elemental canon of construction requiring no extended citation of authority that in construing wills the intention of the testator is sought and must be carried into effect unless it violates some settled rule of law or public policy, (*Daly* v. *Daly*, 299 Ill. 268,) and rules or presumptions relating to the construction of wills are subordinate to the intention of the testator, where that has been ascertained. (57 Am. Jur. 731.) This intention must be determined from the language of the entire will, considered in the light of the facts and circumstances surrounding the testator, his family and property at the time the will was executed. *Martin* v. *Martin*, 273 Ill. 595; *Daly* v. *Daly*, 299 Ill. 268.

While it is the duty of courts to construe wills as they find them, and not to draft new wills (*Illinois Land and Loan Co.* v. *Bonner*, 75 Ill. 315; *Bond* v. *Moore*, 236 Ill. 576,) or conjecture what provisions the testator would have made had he thought of the particular contingency, (*First Trust and Savings Bank* v. *Olson*, 353 Ill. 206,) courts have nevertheless evolved the doctrine of devise or gift by implication, whereby a gift will be sustained though not made by the will in formal language, when the probability of the intention of the testator to make the gift is so strong that a contrary intention cannot be supposed. *Martin* v. *Martin*, 273 Ill. 595; *Connor* v. *Gardner*, 230 Ill. 258; *King* v. *King*, 168 Ill. 273; *Bond* v. *Moore*,

236 Ill. 576; *City Bank Farmers Trust Co.* v. *Hentz*, 107 N. J. Eq. 283, 152 Atl. 331; Cary & Schuyler, Future Interests 331, 57 Am. Jur. 739.

In the instant case, under clause seven of the will, the testator, Henry W. Stern, gave his son Carl an option to purchase tract 1 at a price of $100 an acre, which was to be in effect for two years after the date of the testator's death, and for one year after the date of the death of his wife. It is clear that, until this option was exercised, neither Carl nor his heirs had any title in this property, except as lessees. (*Daly* v. *Daly*, 299 Ill. 268.) The provision cannot reasonably be construed as a devise with a condition subsequent, as defendants urge.

In support of the assertion that this option did not survive to Carl's personal representative or to his descendants, plaintiffs have cited numerous cases. However, the precise issue of the survival of the option was involved only in *In re Ludwick's Estate*, 269 Pa. 365, 112 Atl. 543, and *In re Hauser's Will*, 50 N.Y.S. 2d 709.

The testator in the *Ludwick case* gave his son the privilege of accepting the real estate at the appraised value, and upon his refusal, the testator's three daughters, in order of their seniority, were to have the same privilege, and the court held that the death of the son, before electing, resulted in the termination of the testamentary option, and therefore ordered the sale of the property.

The court cited the rule that "where a person entitled to elect dies without having exercised the right, it is lost and cannot be exercised by his personal representative or heir unless the will expressly so provides," and then concluded that the will therein did not so provide.

It is apparent from the terms of the rule that whether or not the right can be exercised by the personal representative or heir depends upon the provisions of the particular will. Moreover, in the construction of wills it has been noted that little aid is to be derived from judicial

determinations in other cases, unless the will and circumstances are identical in all respects.  57 Am. Jur. 718.

In the instant case, in clause seven there is no expression of testatorial intention as to whether this right is personal, as *In re Hauser's Will*, 50 N.Y.S. 2d 709, where the will granted an "exclusive right" to purchase, or whether it shall survive to Carl's heirs, for the term "option," itself, has been variously defined in the encyclopedias and cases. (67 C.J.S. 511.)  However, when this clause of the will is construed with clause eleven, the intention of the testator is manifest.  As hereinbefore noted, it is provided in clause eleven that, "in all cases of this, my will, where I have made any gift or provision for my children, such terms shall be taken to include the descendants of any of my children who die prior to my death leaving descendants, such descendants to take their parent's share in equal shares per stirpes."

It is clear that the term "provision," used in addition to the word gift in this clause, can be deemed properly applicable to the option provision, otherwise it would have no meaning.  Hence, it appears that under the express terms of the will, if Carl had predeceased the testator, Carl's descendants could properly have exercised the option given to him, thereby revealing a testatorial intent that this option was not a personal or exclusive one to be exercised only by Carl.  However, Carl did not predecease the testator, but died very shortly after the death of his father, without having had an opportunity to exercise the option to purchase this farm on which he had worked all his life, and had made substantial and lasting improvements.

The intention of the testator with reference to this contingency, though not contained in formal language in the will, is unmistakable.  It is necessarily implied that the descendants of Carl should have the same opportunity to exercise the option where Carl died directly after the testator, but before he could exercise the option, as they

would have had if Carl had died the day before the testator's death, which contingency is specifically provided for in the will. Any other conclusion is untenable, for it is unreasonable to assume that the testator, after deliberately and expressly protecting the interests and rights of the descendants of his children in case any of the children predeceased him, would intentionally deny the descendants those rights under the contingency where one of his children died just after the death of the testator but without having an opportunity to exercise the rights granted to him. Undoubtedly, the testator believed that the heirs were protected under the will under this contingency.

If the court does not hold that this option can be exercised, within the time designated, by the descendants of Carl, it will in effect be making a new will for the testator by giving his will a mistaken interpretation in violation of his scheme of distribution. *Bond* v. *Moore,* 236 Ill. 576, at page 607.

A careful reading of the will reveals that the testator had a plan for the distribution of his property whereby his oldest sons by his first wife, who had apparently helped him acquire and farm the land, were to have specific tracts of land, and his surviving widow was to be assured of the home, the furnishings, a lump sum of money and an annual income from the farm. The younger son, Oscar, and the daughters of his deceased son, Alfred, were to receive merely a distributive share of the proceeds from the sale of tracts 3 and 4, and from the sums paid to the estate by Carl and Walter under their options to purchase tracts 1 and 2. Thus, if Carl's heirs are denied the right to exercise this option, even though they would have unequivocally had the right if their father died the day before the testator, they would then merely have the one-sixth distributive share of their parent, to be divided between them, contrary to the expressed plan of distribution of the testator.

The implication that the testator intended this right or option to purchase to survive and be exercised by Carl's descendants if Carl died without exercising it is further enhanced by the circumstances existing at the time of the execution of the will in 1935. As hereinbefore noted, Carl was leasing the property from the testator, and had made valuable improvements thereon, of which testator was aware. Carl's older sons, age 22 and 21, respectively, were also working on the farm. Evidence was apparently admitted, over objections and without a ruling thereon, that the testator had frequently told Carl and his wife that the farm would belong to them on his death, and consequently they proceeded to improve it rather than purchase other property.

Under these circumstances, analogy might be made to the concept of a power coupled with an interest, or to a binding option contract on the theory that the improvements made by Carl constituted the consideration, in order to sustain the conclusion that the option survived, and could be exercised by Carl's descendants. It is our judgment, however, that resort to such techniques would distort legal concepts, and is neither necessary nor a wise exercise of the judicial function. A more reasonable rationale is that the term "option" in the will of Henry W. Stern was used in the sense of a right to purchase; that this right was not intended to be personal to Carl, since, if he predeceased the testator, it could have been exercised by Carl's descendants; that the unmistakable intention of the testator, deduced from an analysis of all the provisions of the will, was that this right should be exercised by the descendants of Carl under the contingency herein, where Carl died before he could exercise it; and, therefore, under the established doctrine of gift by implication, a gift of this right to the descendants of Carl may properly be implied from the express terms of the will.

In *Martin* v. *Martin,* 273 Ill. 595, the gift implied was not merely the right to exercise an option, but a gift of the proceeds of the sale of the remainder. The will therein provided that at the death of the testator's wife the land shall be sold and that Robert A. Martin and George E. Martin shall pay to James C. Martin the sum of $1000 if he is living at the time of the death of the wife, but if James C. Martin shall not be alive at that time then the proceeds of the property shall be equally divided between Robert A. Martin and George E. Martin. It was held that this provision could be interpreted to imply a gift of the proceeds of the sale to George E. Martin and Robert A. Martin equally, subject to payment by them of $1000 to James C. Martin if he is alive, even though there was no express provision to that effect. The court stated at page 601 : "While the first part of the devise of the remainder does not explicitly say that after paying James the $1,000 the remaining proceeds shall be divided between Robert and George, that is the necessary implication from all the language of clause 3, and only by giving it that construction can effect be given the intention of the testator."

Similarly, in *City Bank Farmers Trust Co.* v. *Hentz,* 107 N. J. Eq. 283, 152 Atl. 331, the court implied a gift of the remainder under circumstances where a contingency arose for which the testatrix had not specifically provided. The complainant therein interposed an argument similar in substance to that urged by plaintiffs herein to the effect that the testatrix made express testamentary provisions covering each possible contingency except the one which happened, and that inasmuch as the will contained no provision whatever (except the residuary clause) as to this contingency, the court was powerless to interpolate one. In rejecting this argument the court stated: "In the first place it is conceived that it is not necessary that there be any particular clause or phrase which can be altered or

amended by construction or interpretation into an expression of the implied gift. It is of course true that the will itself must furnish the basis of the construction; it is of course necessary that the requisite probabilities of the testator's intent to make the gift be found from the words and language of the will itself. But it is sufficient if that probable (practically certain) intent is found from the words and language of the whole will." The court explained that it could not be supposed that the testatrix intended to differentiate between the contingencies, and by implication the same estates were granted in the event of the third contingency as were expressly provided by the will in the event of the second contingency.

On the basis of our analysis of the will of Henry W. Stern, and of the doctrine of gift by implication, it is our judgment that the testatorial intent to give the descendants of Carl F. Stern the right to exercise the option to purchase tract 1 under the contingency herein is sufficiently certain from the terms of the will to warrant the implication of a gift of this right to them.

*Decree affirmed.*