In the Matter of the **ESTATE of O. W. LEMKE, Deceased.**

**No. 55380.**

Supreme Court of Iowa.

March 27, 1974.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

Stillman & Goranson, Clear Lake, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS, and McCORMICK, JJ.

RAWLINGS, Justice.

Objector, Wayne R. Lemke (Wayne), appeals from adjudication in probate on reopened estate final report. Executor cross-appeals. We affirm in part, reverse in part.

April 14, 1954, O. W. Lemke (testator), executed his last will and testament.

By paragraph 2 thereof a life estate in a described 170 acre farm was bequeathed to his wife Mary Ann Lemke (life tenant).

It also provides:

"Upon the death of my wife, Mary Ann Lemke, I hereby direct that my son, Clarence E. Lemke, shall have the right and privilege to acquire the real property above described for an amount of $175.00 per acre, and if he elects to acquire said real property by payment of the sum of $175.00 per acre to the Executors of my estate hereinafter named, I direct that he shall file his written election to do so in the Office of the Clerk of the District Court of the County in which my estate is probated, within one year after the date of the death of my wife, Mary Ann Lemke, and that he shall also within such one year period pay the amount of $175.00 per acre for the above described real property to the Executors of my estate, to be distributed as hereafter set forth.

"In the event my son, Clarence E. Lemke, does not elect to acquire the real property above described within one year after the date of the death of my wife, Mary Ann Lemke, then I give and devise the real property hereinbefore described to my sons, Wayne R. Lemke and Clarence E. Lemke, to be their property absolutely in equal shares."

Then paragraph 4 states in substance, Clarence shall have the same option right should the life tenant predecease testator or in event she and testator die simultaneously. The aforesaid equal bequest to Wayne and Clarence is then repeated in event the latter should fail to exercise the above noted option.

Also, paragraph 5 says, in essence, if the option be exercised by Clarence the proceeds shall be divided equally between the two named sons.

November 4, 1957, testator died. His will was admitted to probate and the estate subsequently closed.

June 9, 1963, Clarence died leaving all property to his spouse Pearl M. M. Lemke (Pearl).

March 21, 1970, the life tenant died.

October 5, a petition for reopening of testator's estate was filed by Pearl so she, as Clarence's sole distributee, could exercise the aforesaid option.

October 5, a court order was entered (1) fixing October 19, 1970, as time for hearing on Pearl's petition, and (2) directing notice thereof be sent at least ten days prior thereto, certified mail, to Wayne at his last known designated address in Houston, Texas.

The same day such notice, with copy of petition, was so forwarded. Wayne, however, had moved to Bellaire, Texas and did not receive the mailed hearing notice until October 10, 1970.

October 19, absent appearance by Wayne, trial court ordered testator's estate reopened and appointed G. W. Templeton successor executor.

November 20, executor made application for leave to convey real estate. Simultaneously trial court entered an order fixing December 7 as time for hearing on this application and directing ten day notice, as above, be given Wayne.

November 24, the last mentioned notice was so mailed.

November 28, it was received by Wayne in Texas.

December 7, after hearing on the above mentioned application for leave to convey, trial court approved a conveyance of the farm to Pearl.

Thereafter request was made for approval of executor's final report on the reopened estate proceedings.

Subsequently, Wayne appeared and filed objection to said final report on these grounds: (1) notices given him were inadequate and constitutionally deficient, and (2) the purchase option accorded Clarence by testator's will was a personal right which did not pass to Pearl.

May 18, 1971, hearing was held on objection by Wayne to which executor had filed resistance.

August 30, 1971, trial court found, in material part, (1) the notices given adequately apprised Wayne as to demands made adverse to him but (2) were insufficient to meet procedural due process requirements, therefore, (3) Wayne had full right to contest the estate reopening and order of conveyance to Pearl in course of executor's final report application hearing, (4) the estate was properly reopened, and (5) the aforesaid option was not personal, therefore passed as a property right to Pearl. Thereupon Wayne's objection was overruled and executor's final report approved.

Appellant, Wayne, contends trial court erred in holding the testamentary purchase

option constituted a property right which passed to Clarence's widow.

Cross-appellant, executor, takes issue with the above holding to the effect notices given Wayne did not meet procedural due process standards.

These assignments will be entertained in reverse order.

I. The matter from which this appeal stems was heard and determined in equity and does not fall within any exception set forth in Code § 633.33. Therefore our review is de novo. See In re Estate of Cory, 184 N.W.2d 693, 695–696 (Iowa 1971); In re Estate of Thompson, 164 N.W.2d 141, 146 (Iowa 1969); In re Will of Faber, 259 Iowa 1, 3, 141 N.W.2d 554 (1966); Iowa R.Civ.P. 334.

Weight is accorded trial court's findings but we are not bound by them. See In re Estate of Thompson, *supra*; Iowa R.Civ.P. 344(f)(7).

II. In resisting Wayne's objections to the reopened estate final report, executor contends Wayne's failure to appear in response to the first two mailed notices precluded him from voicing such objections.

Reduced to bare essentials the question resultantly posed is whether the attempted notifications by mail sufficed, under the circumstances, to meet procedural due process requirements.

These court ordered notices were unquestionably authorized by Code §§ 633.-40(1) and 633.489. But those statutory enactments understandably specify no length of time for giving of notice. That does not mean, however, the notifications specified by court order in the matter at hand were ipso facto proper or adequate. Actually, all such action related notifications must meet constitutional muster, i. e., procedural due process.

And as here involved that precept mandates notice and opportunity for hearing appropriate to the nature of the case.

See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313–314, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950). See also Goldberg v. Kelly, 397 U.S. 254, 266–269, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287 (1970); Eves v. Iowa Employment Security Commission, 211 N.W.2d 324, 326 (Iowa 1973); Stubbs v. Hammond, 257 Iowa 1071, 1075–1076, 135 N.W.2d 540 (1965); 16 Am.Jur.2d, Constitutional Law, §§ 548–549; 16A C.J.S. Constitutional Law § 619.

Unquestionably any such notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action *and afford them an opportunity to present their objections.*" (Emphasis supplied). Mullane v. Central Hanover Bank & Trust Co., *supra.*

Significantly, fulfillment of these due process requirements depends upon the facts and circumstances in each case. As stated in *Mullane:*

"[I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " 339 U.S. at 314–315, 70 S.Ct. at 657.

See also Eves v. Iowa Employment Security Commission, *supra.*

Bearing in mind the statutes under which notices were instantly given to Wayne are not challenged by him and that he, in both instances, received actual notice of the hearings, our review is limited to a determination as to whether, under all the circumstances, Wayne was afforded reasonable opportunity to present his objections.

In that regard the record reveals this factual background: (1) Wayne and his wife, Pearl and her daughter and son-in-law, discussed the controverted option aft-

er death of the life tenant; (2) Pearl then revealed her desire to exercise the option but Wayne and his spouse voiced objection thereto; and (3) August 13, 1970, Pearl's attorneys wrote Wayne advising him to the effect Pearl planned to exercise the option, detailed results as to Wayne, informed him they were considering opening testator's estate for such purpose, and suggested he retain counsel.

■ It is to us apparent, however, (1) knowledge of possible action on Pearl's part was not "notice" to Wayne in any legal sense; (2) he had changed his place of abode and was under no duty to so advise anyone presently involved; (3) it was well known to all concerned Wayne resided in Texas and by the aforesaid notices he was called upon to engage counsel, determine appropriate action, and transmit his decision with all related information to an Iowa attorney in time to permit preparation and filing of proper motions or pleadings, all within a restricted period. Under existing circumstances Wayne was not afforded reasonable opportunity for a fair hearing on Pearl's application to reopen the estate, or on executor's application for leave to convey. See Eves v. Iowa Employment Security Commission, *supra;* 16 Am.Jur.2d, Constitutional Law, §§ 560, 562, 569; 16A C.J.S. Constitutional Law § 569(2)(3)(4).

Trial court so found and accordingly held Wayne was not precluded from relitigating and seeking an adjudication anew regarding Pearl's right to exercise the option here involved. We find no cause to disagree with that holding and affirm on executor's cross-appeal.

III. The question next to be resolved is whether the testamentary grant of a purchase option to a designated beneficiary alone is a personal right or, absent prior divestiture by such beneficiary, passes to his heirs or devisees.

In approaching this problem it is essential we refer again to the will, quoted above. After granting his wife a life tenancy in the farm here involved testator provided, in essence, Clarence shall have the right and privilege to purchase the described farm for $175 per acre.

Thereafter, as previously noted, testator provided for exercise of the aforesaid "right and privilege" if his wife predeceased him or in event they should die simultaneously. In either instance, the purchase money to be paid by Clarence, in event the option be exercised, was to be divided equally between Wayne and Clarence.

It is inceptionally appropriate to note this guiding statement in Houts v. Jameson, 201 N.W.2d 466, 468 (Iowa 1972):

"The basic rules governing our consideration of this will are: (1) the testator's intent is the polestar and must prevail; (2) the intent must be gathered from a consideration of all the language of the will, the scheme of distribution, and the facts and circumstances surrounding the making of the will; and (3) technical rules of construction should be resorted to only if the language of the will is clearly ambiguous or conflicting or testator's intent is for any reason uncertain. Hollenbeck v. Gray, 185 N.W.2d 767 (Iowa 1971)."

See also In re Estate of Staab, 173 N.W. 2d 866, 870–871 (Iowa 1970); In re Estate of Lamp, 172 N.W.2d 254, 257 (Iowa 1969); In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503 (1964).

■ Furthermore, since Clarence survived testator our antilapse statute, Code § 633.273, by its own terms, is instantly inapplicable. Mindful of the foregoing we look now to the matter of a purchase option granted by will.

In that regard the majority view is unquestionably to the effect a bare testamentary option is personal to the named beneficiary. Therefore it is not exercisable by his heirs or devisees. See Valley

Bank & Trust Co. v. Williams, 46 Ariz. 20, 46 P.2d 645, 646 (1935); Williams v. Cowan, 226 Ga. 319, 174 S.E.2d 789, 790 (1970); In re Estate of Maguire, 204 Kan. 686, 466 P.2d 358, 360 (1970); In re Quigley's Will, 37 Misc.2d 320, 236 N.Y.S.2d 180, 182–184 (1963); Brown v. Brown, 53 N.M. 379, 208 P.2d 1081, 1086 (1949); 57 Am.Jur., Wills, § 1609.5 (Supp.1973) at p. 144; 96 C.J.S. Wills § 1104 at p. 834; Annot., 28 A.L.R.2d 1167.

Here, however, executor contends the option granted Clarence was a substantial property right, therefore heritable.

Conceding, for the moment, said option constituted a valuable property right we find that factor is not per se determinative.

■ Briefly stated, testator's intent is controlling and such intention must be gleaned, not from what testator meant to say but rather what he meant by what he did say. See Bankers Trust Co. v. Allen, 257 Iowa 938, 944–945, 135 N.W.2d 607 (1965). In other words, it is not for us to here engage in idle suppositions.

Furthermore, the above governing principle applies even though the bequest be a substantial property right.

IV. In holding adverse to Wayne, trial court relied on Tuecke v. Tuecke, 257 Iowa 199, 131 N.W.2d 794 (1964); Mason v. Mason, 194 Iowa 504, 188 N.W. 685 (1922); Mohn v. Mohn, 148 Iowa 288, 126 N.W. 1127 (1910), and Stern v. Stern, 410 Ill. 377, 102 N.E.2d 104 (1951).

It is to us apparent the above cited authorities are here either factually or legally inapplicable.

As noted in Tuecke v. Tuecke, 257 Iowa at 205, 131 N.W.2d at 797: "[T]he option to purchase was a valuable property right which was *inherited* by Alfred Tuecke's heirs *under the provisions of section 633.16 (the antilapse statute)."* (Emphasis supplied). Thus *Tuecke* is clearly distinguishable. For the same reason Mason v. Mason, *supra,* is not in point.

Next to be considered is Mohn v. Mohn, cited above. In that case testator devised described realty to his wife Elizabeth for life, then provided that after her death "my son Philip Mohn *shall have the Land* * * * at (sic) forty-five dollars Per acre and the Proceeds of the same shall Be Divided among all my children, share and share alike." (Emphasis supplied). Elizabeth sold her life estate to Philip. Thereafter Philip died without having paid the $45 per acre.

So, in *Mohn,* Elizabeth held title for life, *remainder in fee to Philip,* subject only to a charge of $45 an acre to be divided between testator's other children. Distinguishably, in the case at bar, testator bequeathed (1) a life interest to his wife; (2) a purchase option to Clarence on life tenant's death; and (3) a contingent remainder in fee to Clarence and Wayne in equal shares, the contingency being nonexercise of the option by Clarence. By reason of the dissimilar interests involved *Mohn* is also inapposite.

We now focus upon Stern v. Stern, *supra.* An analysis of that case reveals the Illinois court relied on what is termed the doctrine of devise or gift by implication. Under that theory, when a testator's probable intention to make the gift is so strong a contrary intent cannot be presumed, then a gift or devise may be found although not expressly voiced in the will. See Bradshaw v. Lewis, 5 Ill.App.3d 261, 282 N.E. 2d 152, 154 (1972). It is to us evident the foregoing seldom used concept is inapplicable under the record at hand.

In support of trial court's position executor also now leans heavily on In re Estate of Beaver, 206 N.W.2d 692 (Iowa 1973). In that case a designated son was, by will, granted a purchase option exercisable within 30 days after a named granddaughter attained her 30th birthday. But testator lived to age 93, long after the granddaughter became 30, thus making impossible the specified option triggering condition. So the question there presented was:

Would testator have intended to excuse the son for noncompliance with the aforesaid impossible condition?

In the case here on appeal, however, the question is not whether testator would have excused Clarence for noncompliance with the option condition, but rather whether testator intended, by what he said, to confer option rights upon both Clarence and his heirs or devisees.

■ We are satisfied the instantly involved will, taken by its four corners, manifests an intent by testator that the purchase option be granted to Clarence alone.

By his will testator declared, at least 13 times, "my son, Clarence E. Lemke" be given the option. Thus, testator emphasized "my son, Clarence E. Lemke", (1) was to receive the option; (2) could file the election to purchase; (3) if so electing must pay $175 per acre for the real estate;

(4) was to receive the deed in event he should exercise the option; and (5) was to have absolute title as though testator had executed a deed, provided the option be exercised as above set forth.

Testator's failure to include words of inheritance creates a strong presumption he did not intend the option bequeathed to Clarence be heritable by him or his heirs. See Bankers Trust Co. v. Allen, 257 Iowa at 945, 135 N.W.2d at 611. Every time testator mentioned his son Clarence he had an opportunity to indicate by words of heirship the option was not personal. But this he did not do and it is not for us to rewrite his will. See Bankers Trust Co. v. Allen, *supra*.

We therefore reverse on objector's appeal. Costs are taxed to Estate of O. W. Lemke.

Affirmed in part, reversed in part.