[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The decedent, Jennie H. Kelm, died testate, a resident of Torrington, Connecticut on January 31, 1992. In her last will and testament dated March 27, 1973, which was admitted to the CT Page 3641 Torrington Probate Court on June 9, 1992, she provided in Article V as follows:
 I instruct my Co-Executors and direct that said Co-Executors shall offer to sell the Kelm Homestead with the surrounding acreage not to include the building lots across the street, to my daughter, Gladys Thrall, for a fixed purchase price of $30,000.00 which I consider to be a fair and just price. Such offer is made in consideration for my daughter and son-in-law's labors to improve the property during the time that they resided there and in consideration of their sentiment for the home where they expressed a desire to live.
On March 12, 1990, prior to the decedent's death, the decedent's daughter, Gladys Thrall, died. Gladys Thrall was survived by her two children, Miles D. Thrall and Peggy S. Pinette. By application of September 4, 1992, Miles Thrall and Peggy Pinette requested the probate court to authorize and direct the fiduciary of the decedent's estate to convey them the "Kelm Homestead" for $30,000.00.
At a probate court hearing on December 22, 1992, Honorable Joseph J. Gallicchio, Judge of Probate, determined that the probate court lacked the proper jurisdiction to rule on the application. On February 9, 1993, the plaintiff, Peter Reis, Jr., as the administrator of the estate, brought this action for construction of Article V of the decedent's will.
The defendants Miles Thrall and Peggy Pinette allege that as successors in interest to their deceased mother, Gladys Thrall, they are entitled to purchase the "Kelm Homestead" pursuant to Article V of the decedent's will and General Statutes 45a-441. General Statutes 45a-441 provides: "[w]hen a devisee or legatee, being a child, stepchild, grandchild, brother or sister of the testator, dies before him, and no provision has been made in the will for such contingency, the issue of such devisee or legatee shall take the estate so devised or bequeathed." 45a-441. In opposition, defendants Zander, Kelm, and Smart argue that the option extended to Gladys Thrall was a personal option which terminated by reason of her death prior to the death of the decedent.
Intent is the "pole star" of will construction. Bridgeport City Trust Co. v. Shaw, 115 Conn. 269, 272, 161 A.2d 341 (1932). To find and effectuate that intent is the "cardinal rule" of will CT Page 3642 construction. Swole v. Burnham, 111 Conn. 120, 121-22, 149 A.2d 229
(1930). In seeking the intent, the court looks first to the will itself and examines the words and language used in the light of the circumstances under which the will was written. (Citations omitted.) Dei Cas v. Mayfield, 199 Conn. 569, 572, 508 A.2d 435
(1986). To ascertain the intent of a particular provision, the will must be read as a whole to discover whether it discloses an underlying intent which should be considered in finding the meaning be accorded to the particular language under construction. Id.
The courts of Connecticut have not specifically addressed the question before the court. The Supreme Court has stated, by way of dicta, that an option, until actually conferred on the optionee, does not grant a contract right or cause of action which could survive to his executor. Hartford-Connecticut Trust Co. v. Devine,97 Conn. 193, 198, 116 A.2d 239 (1922).
The majority of courts in other jurisdictions have held that a right or option given by will to purchase estate property is personal to the optionee, and does not survive his death so as to become exercisable by his successors in interest. 80 Am.Jur.2d 549, 550; See also 96 C.J.S. Wills 1104, p. 834; 18 A.L.R.4th, pp. 579-584; In Re Cianciulli, 159 App.Div.2d 569, 552 N.Y.S.2d 430
(1990); In Re Estate of Lemke, 216 N.W.2d 186 (1974); In Re Estate of Maguire, 204 Kan. 686, 466 P.2d 358, mod on other grounds 206 Kan. 1,576 P.2d 618 (1970); Williams v. Cowan, 226 Ga. 319, 174 S.E.2d 789
(1970); Brown v. Brown, 53 N.M. 379, 208 P.2d 1081 (1949); Bank Trust Co. v. Williams, 46 Ariz. 20, 46 P.2d 645 (1935); Weitzmann v. Weitzmann, 87 Ind. App. 236, 161 N.E. 385 (1928); Adams v. Adams,95 W. Va. 187, 120 S.E. 590 (1923).
Defendants Thrall and Pinette direct the court to a few cases which have held that an option to purchase estate property survives the optionee's death by virtue of an anti-lapse statute, and is thus exercisable by the optionee's successors in interest. Stern v. Stern, 410 Ill. 377, 102 N.E.2d 104 (1951); Mason v. Mason, 194 Iowa 504,188 N.W. 685 (1922); Tuecke v. Tuecke, 257 Iowa 199,131 N.W.2d 794 (1964); In Re Quigley's Will, 37 Misc.2d 320,236 N.Y.S.2d 180 (1963); In Re Ludwick's Estate, 269 Pa. 365,112 A. 543 (1921).
Tuecke and Mason are distinguishable from the present situation because the Iowa anti-lapse statute which was considered in those instances is significantly different than General Statutes45a-441. The Iowa statute, in pertinent part, states: "[i]f a devisee dies before the testator, his heirs inherit the property CT Page 3643 devised to him, unless from the terms of the will a contrary intent is manifest." (Emphasis added.) I.C.A. Section 633-16, Code of 1962. In Tuecke and Mason, the Iowa court utilized the language of this statute to shift the burden to the party challenging the inheritance by statute to prove that it was contrary to the decedent's intention.
In re Ludwick's Estate, although the court stated that an applicable anti-lapse statute may lead to a different result, the court held that an anti-lapse statute was not involved and the option to purchase did not pass to the optionee's heirs. In Re Ludwick's Estate, supra, 544.
In Re Quigley's Will, the court found that the option to purchase realty passed to the surviving children of the deceased optionee. The court made this determination, however, based on a finding that the decedent's entire will "shows definitely that the testator intended to prefer Harry [the optionee] over his sister Margaret." In Re Quigley's Will, supra, 185. Similarly, in Stern, the court looked to a different clause in the will to conclude that the testator intended that the option be exercised by the children of the predeceased optionee. Stern v. Stern, supra, 109.
In the present case, the decedent's will as a whole indicates that the decedent was attempting to make an equal division of her estate between her four children. The option to purchase the "Kelm Homestead" was extended to Gladys Thrall because she lived there and intended to reside there in the future. There is no indication that the decedent intended to extend the option to purchase the home to Gladys' children to the exclusion of the decedent's surviving children. To effectuate that result, the testator could have inserted the necessary words.
Accordingly, Paragraph V of the decedent's will is found to be a personal option, of Gladys Thrall which terminated when she died prior to the death of the decedent.
PICKETT, J.